BERTI v. COMPAGNIE DE NAVIGATION CYPRIEN FABRE (AMERICAN STEVEDORES, Inc., third-party defendant-appellee).

No. 73, Docket 22786.

United States Court of Appeals, Second Circuit.

Argued Dec. 14, 15, 1953.

Decided May 26, 1954.

17.  Cf. Weiss v. Los Angeles Broadcasting Co., supra.

**398**

Robert Klonsky, New York City (Philip F. DiCostanzo, Brooklyn, N. Y.,

and Jack Steinman, New York City, on the brief), for plaintiff-appellee.

Eugene Underwood, New York City (Burlingham, Hupper & Kennedy, Benjamin E. Haller, and John A. Gleason, New York City, on the brief), for defendant third-party plaintiff-appellant.

George A. Garvey, New York City, for American Stevedores, Inc., third-party defendant-appellee.

Before CLARK, FRANK, and HINCKS, Circuit Judges.

CLARK, Circuit Judge.

This appeal involves the recurring problems of liability of a vessel owner to an injured employee of the stevedore it has hired to load or unload the vessel and of the liability of the stevedore for indemnity to the vessel owner.

Plaintiff, Thomas Berti, a longshoreman employed by third-party defendant, The American Stevedores, Inc., was injured in the course of his employment while loading a vessel owned and operated by defendant-appellant, Compagnie de Navigation Cyprien Fabre. American was in charge of the loading operation, during which it stationed plaintiff on the cover of a partly open hatch. His function was to direct two winchmen, situated on the main deck, whose winches were operating through the hatch opening and down into the lower decks. While plaintiff was thus standing on the hatch cover, a cable from the winches dislodged a supporting beam, and he was dumped 35 feet into the hold below.

Plaintiff thereafter brought this action against defendant Cyprien, alleging unseaworthiness of the vessel in that the beam was inadequately secured, and that the winch cable was defective. He also alleged negligence in failure to provide safe equipment and adequate inspection, and failure to provide adequate supervision for the loading operation. Cyprien filed a third-party complaint against American, seeking full indemnity for any recovery by plaintiff on the theory that any fault was that of Ameri-

can, which was in complete control of the operation. American, in its answer, set up its compliance with the provisions of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq. After trial of the issues the district court dismissed the third-party complaint, and in the main action entered judgment on a jury verdict for plaintiff of $52,000. This appeal challenges both judgments.

At the trial there was virtual agreement on the condition of the ship's equipment, but the witnesses drew sharply different conclusions as to its adequacy. There was also disagreement as to the propriety of American's method of operating. The trial judge, at one point in his charge, stated:

"Another witness, Giani, who was a superintendent employed by the defendant steamship line, he testified that he was in the vicinity of the hatch opening at the time this work was being done, and that he saw the plaintiff on the hatch board. Now, I said before that the longshore concern has control of the loading operations, yet, nevertheless, the master of the ship is still in charge, and those underneath him could have stopped the work if they thought that what the plaintiff was doing was unsafe. They could not tell him how to do the work, but they could stop him from continuing to do it if they felt there was a danger or hazard in connection with the work."

Later in the charge he stated: "On the other hand, if you find that the carelessness or the contributory negligence of the plaintiff or his fellow workers was the sole cause of the accident, then, of course, you will find for the defendant." And in a subsequent discussion of counsel's exception (out of the jury's hearing) he pointed out that "I didn't use the word 'duty,' and I deliberately refrained from using the word 'duty.' " [1] But the later statements do not correct the error. The inference appears unmistakable that Cyprien could be found liable, despite fully adequate equipment, solely on the basis of its failure properly to supervise the operation. This we think was fatal error.

The contract required that American

"2. b. Provide all necessary stevedoring labor, including winchmen, hatch tenders, tractor and dock crane operators, also foremen and such other stevedoring supervision as are needed for the proper and efficient conduct of the work."

American relies heavily on the fact that two of Cyprien's men were present

1. "Mr. Haller: I respectfully except to that portion of your Honor's charge which indicated, if I am not mistaken, that the defendant's representatives were under a duty to stop or prevent the plaintiff or other stevedoring employees from working in a particular manner on the following grounds, that if the danger involved in such manner were plainly evident and equally evident to the stevedores and to the plaintiff as it was to the defendant's representatives, then the failure of the defendant or its employees to warn them couldn't have been the proximate cause of the accident because it would have only brought to their attention facts which were obvious and which they also knew.

"The Court: I made no mention of failure to warn. I said they could have stopped the work. Giani saw the work being done, saw him standing on the board, and if he thought standing on that board were improper and dangerous, he could have merely stopped the work because while control of the rigging operation was in the hands of the longshoremen crew, the ship was still, the entire ship was still under the control of the master of the ship and his employees.

"Mr. Haller: My exception is directed, your Honor, to any implication, which I thought was in your charge, to the effect that under those circumstances there was any duty on the part of the ship's officers to take the initiative and to stop the work which was being done in a manner which the stevedores had chosen to do it.

"The Court: I didn't use the word 'duty,' and I deliberately refrained from using the word 'duty.' I said they had control of it and they could have stopped it.

"Mr. Haller: My exception may have been redundant, but I think as a precautionary measure I must make it."

at the hatch supervising distribution of the cargo and guarding against pilfering. But there is no evidence that they were in any other way concerned with the manner in which American performed its work. As we said in Gallagher v. United States Lines Co., 2 Cir., 206 F.2d 177, 179, certiorari denied 346 U.S. 897, 74 S.Ct. 221, "a general ability to control the work in order to insure that it is satisfactorily completed in accordance with the requirements of the contract does not of itself make the hirer of an independent contractor liable for harm resulting from negligence in conducting the details of the work." American has continually asserted that there was an issue as to control of the operation, but we see virtually no evidence to support its contention. And had there been, the question would properly have been one for the jury. We are clear that since control of the details of the operation was left to American, Cyprien cannot be held for negligence in the latter's performance.

■ The Supreme Court has recently held that an owner's absolute duty to provide a seaworthy vessel, together with its appurtenant appliances and equipment, is not affected by relinquishment of control to another. The owner is liable even for defects in equipment brought aboard by a stevedore and used under the stevedore's sole control. Alaska S. S. Co. v. Petterson, 347 U.S. 396, 74 S.Ct. 601, affirming Petterson v. Alaska S. S. Co., 9 Cir., 205 F.2d 478. This appears to be contrary to a line of cases in this circuit: Grasso v. Lorentzen, 2 Cir., 149 F.2d 127, certiorari denied 326 U.S. 743, 66 S.Ct. 57, 90 L.Ed. 444; Lauro v. United States, 2 Cir., 162 F.2d 32; Lynch v. United States, 2 Cir., 163 F.2d 97; Mollica v. Compania Sud-Americana de Vapores, 2 Cir., 202 F.2d 25, certiorari denied Compania Sud-Americana de Vapores v. Mollica, 345 U.S. 965, 73 S.Ct. 952, 97 L.Ed. 1384; Gallagher v. United States Lines Co., supra; and to the same effect Lopez v. American Hawaiian S. S. Co., 3 Cir., 201 F.2d 418, certiorari denied 345 U.S. 976, 73 S.Ct. 1125, 97

L.Ed. 1391; see discussion and criticism in 102 U. of Pa.L.Rev. 402. But that, as we view it, does not control the issue before us.

In its basic form the doctrine of seaworthiness imposes a warranty on the shipowner that the ship and its equipment are not defective. Mahnich v. Southern S. S. Co., 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561; The Osceola, 189 U. S. 158, 23 S.Ct. 483, 47 L.Ed. 760. That warranty has been extended to the adequacy and competency of the crew. Keen v. Overseas Tankship Corp., 2 Cir., 194 F.2d 515, certiorari denied Overseas Tankship Corp. v. Keen, 343 U.S. 966, 72 S.Ct. 1061, 96 L.Ed. 1363; Yates v. Dann, D.C.Del., 11 F.R.D. 386; cf. The Rolph, 9 Cir., 299 F. 52, certiorari denied Rolph Navigation & Coal Co. v. Kohilas, 266 U.S. 614, 45 S.Ct. 96, 69 L.Ed. 468. But it has never been held that it requires the best possible equipment, see Doucette v. Vincent, 1 Cir., 194 F.2d 834, or that the crew will be free from negligence. See Keen v. Overseas Tankship Corp., supra, 2 Cir., 194 F.2d at page 518; cf. Cookingham v. United States, 3 Cir., 184 F.2d 213, certiorari denied 340 U.S. 935, 71 S.Ct. 495, 95 L. Ed. 675; Larsson v. Coastwise (Pacific Far East) Line, 9 Cir., 181 F.2d 6, certiorari denied 340 U.S. 833, 71 S.Ct. 55, 95 L.Ed. 612. It requires only that equipment be reasonably fit for the use for which it was intended, and that seamen be equal in seamanship to the ordinary men in the calling. Since there is no claim here that the longshoremen were incompetent we think Alaska S. S. Co. v. Petterson, supra, not pertinent. If plaintiff's injuries resulted solely from the manner in which the work was done under American's supervision, he has no recourse against Cyprien.

■ As for the dismissal of the thirty-party action, we also there find error. In our recent decision in Palazzolo v. Pan-Atlantic S. S. Corp., 2 Cir., 211 F.2d 277, we held that in the absence of express contract, indemnity over is recoverable where the stevedore's negligence was the "sole," "active," or "pri-

mary" cause of the accident. In the present case the contract contains an indemnity clause, but it is entirely silent on the subject of personal injury and is generally ambiguous. See American Stevedores, Inc., v. Porello, 330 U.S. 446, 67 S.Ct. 847, 91 L.Ed. 1011. In the absence of any contrary evidence as to the intent of the parties, see Porello v. United States, D.C.S.D.N.Y., 94 F.Supp. 952, we hold that it established the same relationship as in Palazzolo v. Pan-Atlantic S. S. Corp., supra. American had no duty to inspect, but it was fully aware of the condition of the ship's equipment and failed to take proper precautions. Hence on this showing American's fault was primary; and on the record now before us Cyprien was legally entitled to indemnity for any judgment which plaintiff might ultimately recover.

As there must be a new trial it will be appropriate to pass on various other issues raised by the parties. Cyprien throughout the trial sought to show that certain batten bands were adequate locking devices for the beam in question. Most of the testimony was excluded on the apparent ground that this was not the purpose for which they were provided. Whether or not they were intended for this use, we think Cyprien was entitled to show, if it could, that they were a convenient and adequate substitute for the more conventional form of beam lock.

At the close of the trial Cyprien sought a conventional charge on negligence and the standard of ordinary care. It was denied—we think correctly. Insofar as Cyprien had an ordinary duty to provide a safe place to work, it here completely overlapped its absolute duty to furnish a seaworthy ship. For the only faults charged for which Cyprien could be held, related to the condition of a cable and the absence of beam locking devices. Either, if proved, would render the ship unseaworthy. As for the manner in which the work was performed, and any resulting transitory conditions, such as the partly covered hatch, which may have been unsafe, American's

assumption of control relieved Cyprien of responsibility. Concepts of negligence were accordingly irrelevant in this context. Of course we do not pass on whether or not Cyprien fulfilled its absolute obligation to provide reasonably suitable appliances.

The judgment and order appealed from are therefore reversed and the action is remanded for further proceedings not inconsistent with this opinion.