Frank PEDUTO, Libelant,

v.

UNITED STATES of America, Respondent,

and

Pittston Stevedoring Corporation, Respondent-Impleaded.

No. A–19820.

United States District Court
E. D. New York.

June 28, 1957.

Samuel P. Fensterstock, New York City (Jacob Rassner, New York City, of counsel), for libelant.

Leonard Page Moore, U. S. Atty., Brooklyn, N. Y., for respondent. Harold F. Cumisky, Jr., Atty., Dept. of Justice, New York City, of counsel.

William J. Kenney, New York City, for respondent-impleaded.

REEVES, District Judge.

This action is a libel for an alleged tort in admiralty. Such action is authorized perforce the provisions of Sections 741 et seq. and 781 et seq. Title 46 U.S.C.A. and the Federal Claims Tort Act, § 1346 Title 28 U.S.C.A.

Early in the morning of February 5, 1951, the libelant sustained an injury by being thrown from the roof of an Army Lighter on Pier 12, Staten Island, New York. The lighter was one used by the army of the respondent, and was moored for the purpose of taking on cargo.

The libelant and three other employees of Pittston Stevedoring Corporation were on the roof of the lighter for the purpose of removing hatch covers so that the cargo might be placed in the hold of the vessel. It was cold, and on the previous day snow had fallen. Because of the low temperature and the precipitation, the hatch covers were frozen and sealed by ice. Each section of the several hatch covers on the lighter had four ropes attached to rings at each corner. The covers were resting on tracks coursing fore and aft of the lighter. The ropes were a part of the appurtenances or equipment and were designed to be used to pull each cover section fore or aft as occasion might require.

A difficulty was experienced in following the usual method of removing a hatch cover, and the libelant called to the aid of himself and associates a "gantry" crane located on the pier and used for the purpose of loading and unloading cargo. Libelant sought the use of said crane to break the icy seal of a hatch cover so that it might be moved on its track and thus afford an opening for the loading of cargo.

In the process libelant took two of the ropes attached to a section and used them as a "sling" as he termed it, and placed the sling on the hook of the gantry crane. While standing on the hatch cover libelant signaled the operator of the crane to apply a lifting force. The force applied not only broke the icy seal but lifted the hatch cover from its provided tracks. One of the ropes broke, with the result that libelant was thrown from the roof of the lighter to the concrete pier approximately fifteen feet below. He claims a fracture of his right wrist, and a sprain to his back.

Based on these undisputed facts, the libelant instituted this action, and averred:

"* * * that the accident * * * was due to the carelessness, negligence and recklessness of the respondent * * *, or its agents, servants, or officials, and through no negligence contributed thereto on the part of the libelant; *in that the sling was defective and the other appurtenances in connection with the lifting apparatus were also defective and out of order.*" (Emphasis mine.)

The respondent admitted the jurisdiction of the court and that the lighter designated as "BC–634" "was owned and operated by the Army of the United States Government."

It was admitted, moreover, by the impleaded-respondent, that the libelant was a longshoreman by occupation and was employed at the time by the said impleaded-respondent.

It was further admitted by the impleaded-respondent that the libelant, together with three co-employees, was instructed to board the said lighter "for

the purposes of discharging cargo." (This should read "for the purposes of *loading* cargo."

The respondent, in its answer, alleged:

"Ninth: That any injury received by libelant at the time and place alleged in the libel was caused by the negligence of the libelant himself, * * *."

Other defensive averments need not be set up.

As a precaution, the respondent impleaded Pittston Stevedoring Corporation. This was done because of a stevedoring contract with the said corporation effective from July 1, 1950 to June 30, 1951. By this contract the impleaded-respondent assumed liability for all misadventures that might occur during stevedoring operations.

The following exception was incorporated in Article 12 of the contract:

"(b) The contractor shall not be responsible to the Government for and does not agree to hold the Government harmless from loss or damage to property or bodily injury to * * * persons.

"(1) If the unseaworthiness of the vessel or failure or defect of the gear or equipment furnished by the Government contributed jointly with the fault or negligence of the contractor in causing such damage, * * *."

This was the exception, unless, in the exercise of due diligence the contractor (that is the impleaded-respondent) could have discovered such unseaworthiness or defects, if any.

The impleaded-respondent, by its answer, in effect joined the respondent in fixing the blame for the accident upon the alleged negligence of the libelant. Furthermore, the impleaded-respondent set forth in its answer the exception in the contract with the respondent heretofore set out. Other averments of the impleaded-respondent's answer need not be set out here.

If libelant's theory had been sustained by the evidence, then recovery for his claimed injuries would have been warranted under the authority of The Osceola, 189 U.S. 158, 23 S.Ct. 483, 47 L. Ed. 760 and the many authorities based upon that opinion.

On the other hand, if the contention of the Government was supported by the evidence, then, perforce the case of Doucette v. Vincent, 1 Cir., 194 F.2d 834; Berti v. Compagnie De Navigation Cyprien Fabre (American Stevedores, Inc.,) 2 Cir., 213 F.2d 397, libelant is not entitled to recover.

The facts as disclosed at the trial were in substance that the ropes attached to the hatch cover were adequate for removing such cover on its tracks manually, and that was the sole purpose for which the ropes were provided. It was apparently not usual for hatch covers to become frozen and sealed by ice so as to make it difficult or impossible for the hand ropes to shift such covers on their tracks.

While the libelant himself testified that he had never before observed the use of a gantry crane to break and release a vessel hatch cover, yet other witnesses testified that it was a practice. There was, of course, contrary evidence. Moreover, many piers where vessels were moored did not have occasion to use gantry cranes. While the libelant and his co-employees were instructed to go aboard the army lighter to remove the hatch covers so as to open the hatches, they were not instructed to bring to their aid, in dislodging a sealed or frozen section, a gantry crane. The idea originated with libelant and his associates. Although there were four ropes on each section of the hatch covers, the libelant fabricated a "sling" out of but two of the ropes and to this sling the hook of the gantry crane was attached.

As stated, libelant stood on the hatch cover when he signaled the operator of the gantry crane to supply the lifting force. The hatch cover weighed several hundred pounds, and it had the added weight of libelant. More force was applied than would have been sufficient to break the icy seal. The hatch cover, with

libelant riding on it, was lifted off its tracks. One of the ropes broke and at the same time libelant was thrown to the pier below.

Other facts, if and as they may become pertinent, will be stated in the course of this memorandum opinion.

1. There was no evidence that the ropes attached to the hatch cover were inadequate or defective for their intended use. The strain of a drastic lifting operation with weight that was considerable caused one of two ropes to break. If the hatch cover had been pulled in the usual way, there were four ropes designed for that purpose and they were adequate. With the application of a greater force in the procedure mentioned there is no reason why all of the ropes should not be utilized as a sling. If the equipment and appurtenances of the vessel were without defect, then of course the libelant would not be entitled to recover, and such is the overwhelming testimony.

2. It was not only the exercise of bad judgment, but it was negligence on the part of the libelant to stand on the hatch cover while force was being applied to break the icy seal. Because of weather conditions and the snow of the previous day the hatch covers on the roof doubtlessly presented obvious hazards and dangers. The libelant should have stood aside and then signaled the operator of the crane to apply a lifting force.

3. The operator of the gantry crane was not an employee of the respondent but an employee of the impleaded-respondent. He undoubtedly knew the use to which he was about to put the gantry crane. He undoubtedly understood and had been informed that the object was to break the icy seal of a hatch cover. He saw the libelant standing on the hatch cover when he received a signal to apply force. It was intended that he would break the icy seal only, and not lift the cover off its tracks. Employees were then to shift the cover. He knew the obvious hazards because of inclement weather and yet he applied such force, not only to break the seal, but to lift the cover off its tracks and thus throw the libelant off balance. This was negligence.

4. There was no evidence that would in any way involve the impleaded-respondent as being jointly responsible or liable in the slightest degree for this accident.

Findings of fact and conclusions of law are filed herewith.