**Jeremiah T. PIERCE, Plaintiff,**

**v.**

**ERIE RAILROAD COMPANY, Defendant and Third-Party Plaintiff,**

**WILLIAM SPENCER & SON CORP. and John W. McGrath Corporation, Third-Party Defendants.**

United States District Court
S. D. New York.

Jan. 31, 1958.

Davis, Polk, Wardwell, Sunderland & Kiendl, New York City, for defendant. and third-party plaintiff, J. Roger Carroll, New York City, of counsel.

John P. Smith, New York City, for third-party defendant William Spencer

& Son Corp., Joseph A. Driscoll, New York City, of counsel.

Macklin, Speer, Hanan & McKernan, New York City, for third-party defendant John W. McGrath Corp., Martin J. McHugh, New York City, of counsel.

CONGER, District Judge.

Action by plaintiff Jeremiah T. Pierce against Erie Railroad Company for damages for personal injuries sustained by him while he was working as a long-shoreman on the lighter Erie 80, owned, operated and controlled by defendant Erie Railroad Company (hereinafter referred to as "Erie"). In his complaint, plaintiff alleged that the accident which resulted in his injuries was caused and brought about by the unseaworthiness of the lighter Erie 80. Defendant Erie denied this allegation and also set up the defense of contributory negligence.

Subsequently, defendant Erie by the service of a third party complaint impleaded third party defendants William Spencer & Son Corp. (hereinafter referred to as "Spencer") and John W. McGrath Corporation (hereinafter referred to as "McGrath").

In turn, third party defendant Spencer cross-claimed against McGrath. Third party defendants Spencer and McGrath have both served appropriate answers and issue has been joined as between all the parties here.

The case came on for trial before me with a jury. At the commencement of the trial it was stipulated by all the parties that the only issue to be presented to the jury would be that of Pierce against Erie, and that the issues between Erie, Spencer and McGrath be tried to the court at the end of the trial or after a verdict had been rendered by the jury in the original action.

The jury returned a verdict in favor of the plaintiff against the defendant Erie in the sum of $10,000, and such judgment has been duly entered. I have been informed that the judgment has been paid in full by defendant Erie.

There is now before me for determination the remaining issues.

The original stipulation was to the effect, among other things, that in passing on the issues between Erie, Spencer and McGrath, the court would consider the evidence taken in the case tried to the jury and any additional testimony later offered. Subsequently, the parties appeared before me and additional testimony was taken. So that I now have before me the question of who eventually shall be charged with this judgment.

Defendant Erie demands that in the event a judgment is rendered against it, that it shall have judgment over against third party defendant Spencer or, in the alternative, against third party McGrath, together with reasonable counsel fees and expenses and the costs and disbursements of this action. And third party defendant, Spencer, in its cross-complaint asks for judgment over against McGrath.

On April 9, 1954, plaintiff, a longshore-man, was working on Erie lighter No. 80 at Pier B, Jersey City. He was in the employ of third party defendant McGrath at that time. With fellow employees of McGrath on the lighter, he was assisting in loading heavy logs on to the lighter from a vessel alongside it. The lifting of the logs from the vessel to the lighter was being done by a crane on the other side of the lighter. The crane was not owned or operated by any of the defendants here. As the crane lifted a log over and on to the lighter, it was plaintiff's job, with his fellow longshoremen, to push the log as it was lowered into the space where it was to go. The testimony was that the logs were heavy, clean and dry. Plaintiff's story (which the jury must have accepted) was that as one of the logs was being lowered, almost to the deck, he was pushing it, and as he did so he slipped on oil or grease that was there on the deck—also described as a slick of grease or oil—, a black grease, a black-gray grease spot, a grease spot about 12 inches in diameter. As a result of the accident, plaintiff sustained a fracture of the left heel bone

with some resultant incapacity in the foot.

When the jury returned its verdict, a motion was made by the attorney for Erie to set it aside on the ground that it was excessive. This I denied.

The case was tried solely on the theory that the lighter was unseaworthy. No charge of negligence was made. I charged the jury, among other things, as follows:

"It gets down solely to a question of seaworthiness of the vessel, and that gets down to a question about oil or slick or grease on the deck.

\* \* \* \* \* \*

"In order to find for the plaintiff under the theory of the case presented by the plaintiff, the jury must find that there was oil or grease on the deck of the Lighter, and that this oil or grease caused plaintiff to slip and fall.

"The burden of proof is upon the plaintiff to establish by a fair preponderance of the evidence that the Lighter was unseaworthy by reason of the presence of oil or grease on the deck, and that this caused plaintiff's injury."

The work of loading the logs had been going on for about two hours. The lighter had been towed into the berth where it was to receive its cargo and then work started. The lighter had no motive power.

I do not have the advantage of a transcript of the testimony, but my recollection of the testimony is that when the lighter came in it appeared to be clean. The only persons on the lighter during the progress of the work were employees of McGrath. No employee of the defendant Erie nor of third party defendant Spencer was on the lighter during the progress of the work. Plaintiff testified that when he went on board to work the deck was clean as far as he could see. He worked for two hours, back and forth in the area where he fell, and didn't see any oil, nor did anyone call his attention to any oil on the deck. There was testimony by the operator of the crane who went down to the place of the accident after it occurred, that the oil didn't show up; that it was blended in with the deck.

Plaintiff and several employees of McGrath, including the foreman, testified. No one had seen any oil or grease on the deck prior to the accident. The case is absolutely barren of any testimony as to what may have caused the oil to be there. There was testimony that no oil was used on the lighter and no employees of McGrath brought any oil on the lighter and that there could have been no oil from the crane. So that there was absolutely no testimony as to how the grease came to be there or how long it had been there.

Defendant Erie offered no witness in its behalf.

At the time of the accident, there was in existence between Erie and Spencer a certain contract, by the terms of which Spencer agreed to perform all stevedoring operations in New York Harbor for Erie, including the work here in question. The work, however, was being done by McGrath pursuant to a private arrangement pursuant to which McGrath was to perform Spencer's obligation to stow the logs aboard the lighter and accordingly, McGrath undertook performance of Spencer's obligation in that respect. Apparently there was no written contract between Spencer and McGrath, but there was an oral arrangement between them. McGrath had no arrangement or contract with Erie.

Erie paid Spencer for the work performed and Spencer paid McGrath.

In the aforesaid contract between Erie and Spencer there was the following provision:

"Sixth: 1. The Contractor assumes all liability for loss or damage to property and injury to or death of persons (including workmen's compensation) of:

"(a) itself, its officers, agents or employes

"(b) the Railroad, its officers, agents or employes

"(c) all other persons or corporations, including the property being handled by the Contractor under this agreement and the Railroad's tools, machinery and equipment used by the Contractor for that purpose; arising from any and all causes in connection with the handling of freight hereunder, and will indemnify the Railroad against any and all expense in connection therewith, except when such loss, damage, injury or death is due solely to the negligence of, or conditions created solely by the Railroad, its officers, agents or employes.

\* \* \* \* \* \*

"3. The Contractor will indemnify and save harmless the Railroad of and from any and all claims, demands, suits, costs, damages, judgments, fines or penalties, and any and all expenses, disbursements or costs incurred, or paid in connection therewith, or in connection with the handling or defense of such matters, arising from, connected with, or imposed or incurred as a result of the Contractor's failure to comply with and fulfill all of the terms, conditions and obligations or assume its full responsibility and liability, under this section or any other section of this Agreement."

■ I find for Erie against Spencer on the claim based on the indemnity agreement heretofore set forth. True, such an agreement of indemnification must express an intention to throw the loss upon the indemnitor beyond any peradventure of a doubt (Mostyn v. Delaware, L. & W. R. Co., 2 Cir., 160 F.2d 15). I think such an intention is expressed here. The language is plain, direct and unequivocal, and the intention is clearly expressed. By its agreement Spencer undertook to assume any liability for loss or damage because of an injury to a person "arising from any and all causes in connection with the handling of freight hereunder, and will indemnify the Railroad against any and all expense in connection therewith".

On its face, this certainly seems to be an absolute assumption of liability on the part of Spencer.

■ But there were two specific exceptions to the above: When the injury was due (1) solely through the negligence of Erie or (2) solely to conditions created by Erie. No attempt was made by Spencer to prove that the accident was so caused. Plaintiff did not claim any negligence on the part of Erie and none was proved. The verdict was based on unseaworthiness which, as I charged the jury, is a "species of strict liability regardless of fault." There is no question here of active or passive negligence. There was no proof in the case that Erie *solely* created the condition which caused the accident. Nor, I feel, may there be such an assumption. As a matter of fact, there was nothing to associate this spot of grease with Erie except that it owned the lighter. But, for at least two hours, it had relinquished control of the vessel. There was no evidence as to when or how this spot of grease got on the deck. There was some evidence (not too specific) that the deck was clear when it was brought alongside the vessel to be unloaded and when the work started.

This disposes of Erie's claim based on the written agreement of indemnity.

In view of my holding, I feel it unnecessary to pass on the other facet of Erie's claim based on the implied indemnity agreement. See Ryan Stevedoring Co. v. Pan-Atlantic S. S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133.

As to Erie's claim against McGrath, I shall discuss that in connection with Spencer's claim against McGrath. After all, if McGrath is held liable, that will absolve both Erie and Spencer.

As to McGrath:

In its third party complaint against McGrath, defendant Erie charged that the work was being done by McGrath, who, at the time, had sole control of the lighter, and that the accident and consequent injuries to plaintiff were caused by the primary negligence of McGrath in

failing to use reasonable care to provide plaintiff with a safe place within which to work, in creating the condition or conditions which plaintiff alleges caused the injuries, and in operating, managing and controlling the stevedoring operations in such a manner as to permit to occur the events which plaintiff alleges caused his injuries; and, further, that by reason of the provisions of the contract between Erie and Spencer, or by reason of the fact that Erie was at most secondarily negligent while McGrath was primarily negligent, or both, Erie should be entitled to recover judgment over against McGrath if plaintiff recovers a verdict and judgment against Erie.

Defendant Spencer charges that plaintiff's injuries were brought about by reason of the breach by McGrath of its warranties and representations and by reason of the primary, active and affirmative negligence of McGrath, in that it caused the said lighter to be and remain in an unseaworthy, unsafe and dangerous condition.

On both of the above claims, in order to hold McGrath liable it must be found that McGrath was guilty of some active, primary or affirmative negligence. In other words, it must have done something that was negligent, that brought about the condition that resulted in or caused and brought about the accident. I find no such negligence here on the part of McGrath. Erie was properly held in the case on the theory of unseaworthiness, which has nothing to do with negligence. I have held Spencer responsible here solely because of its warranty in its written agreement which I find was breached. There is no proof here that McGrath created the condition which made the deck either an unsafe place in which to work for its employees or rendered the vessel unsafe and unseaworthy. There is no proof here by anyone that the work being done was improperly performed by McGrath or, as I said before, that it created this condition. In that respect, Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133, and McFall v. Compagnie Maritime Belge, 304 N.Y. 314, 107 N.E.2d 463, are not applicable here because, in those cases, in each instance, there was found some active, primary and affirmative negligence on the part of the stevedore. That we do not have here.

In order to find McGrath liable, I would have to find that the spot of grease on the deck was there by reason of some fault on the part of McGrath. I cannot find any such thing in the evidence, and no one has proved any such thing although the burden of proof was on Erie and Spencer so to show. I do not believe that any obligation can be spelled out which would require McGrath to inspect every bit of deck area prior to commencing its work of loading the logs aboard the lighter. There was some testimony that the spot blended in with the deck. With the spot there and with McGrath men solely on the lighter, may that be sufficient to hold McGrath? I think not. In connection with that, see American Mutual Liability Ins. Co. v. Matthews, 2 Cir., 182 F.2d 322. Of course, if McGrath employees knew of the spot on the deck and continued to work, a different situation would be created. See Berti v. Compagnie De Navigation Cyprien Fabre, 2 Cir., 213 F.2d 397.

Defendant Erie is entitled to recover from Spencer the amount of the judgment rendered against it, to wit, the sum of $10,000, and $2,720 reasonable counsel fees and necessary expenses in defense of the action amounting to $182.34, a total of $12,902.34.

The third party complaint of Erie against McGrath is dismissed.

The third party complaint of Spencer against McGrath is dismissed.

The foregoing shall constitute the Court's findings of fact and conclusions of law. Should either party desire separately numbered findings of fact and conclusions of law, these may be proposed within five days upon notice to the other side.