**William Luther BLANKENSHIP, to the use of Liberty Mutual Insurance Company,**

v.

**ELLERMAN'S WILSON LINE, NEW YORK, Inc., Defendant and Third-Party Plaintiff,**

**Oriole Ship Ceiling Co., Inc., Third-Party Defendant.**

**Civ. No. 9364.**

United States District Court
D. Maryland,
Civil Division.
Feb. 25, 1958.

Hyman A. Pressman, Baltimore, Md., for plaintiff.

Southgate L. Morison and Randall C. Coleman, Jr., Baltimore, Md., for defendant and third-party plaintiff.

Jeffrey B. Smith, Baltimore, Md., for third-party defendant.

THOMSEN, Chief Judge.

This civil action for personal injuries was brought by a ship ceiler against the owner of the ship on which he was working when he was injured; defendant brought in plaintiff's employer as a third-party defendant; written questions were submitted to a jury, and resulted in a judgment for defendant; and the case is now before the court on plaintiff's motion for a new trial.

Plaintiff is an experienced ship ceiler, one of a gang which on the evening of February 26, 1956, was employed by Oriole Ship Ceiling Co. to install shifting boards in the center of the No. 2 hatch on the S. S. Bassano, which was then lying in Baltimore harbor. Three of the gang were on deck, seven in the hold. Plaintiff was on a scaffold, some ten or twelve feet above the inner bottom, nailing boards. His fellow employees undertook to lift a draft of lumber from the lower hold by means of a winch and cable; one end of the draft struck the scaffold, tilted the board on which plaintiff was standing, and caused him to slide and fall to the bottom of the hold.

There is a dispute about the adequacy of the working lights supplied by the ship, with respect to both number and type. Plaintiff charged that the ship was unseaworthy because of inadequate lighting and offered some evidence to that effect, but the jury answered "No" to the question: "Did any unseaworthiness of the S. S. Bassano cause or contribute to the accident of which the plaintiff complains?".[1] There was no evidence of any negligence on the part of the owners, agents, officers or crew of the ship except the alleged failure to supply adequate lighting.

There was evidence tending to prove that plaintiff's fellow ship ceilers—employed and directed by Oriole—were negligent in the manner in which they raised the draft of lumber out of the hold. Plaintiff also contends that they were negligent in failing to give him adequate warning just before they started to lift, although one of the deckmen did call out some sort of warning, and the other men in the hold had moved the light under which the plaintiff had been working so that it would not be struck by the draft. There was evidence tending to prove that it was negligent for plaintiff to remain on the scaffold after the light had been moved.

I. Plaintiff argues that the court should have submitted to the jury the question: "Did any negligence of the Steamship Company or of any officer or member of the crew of the Steamship Bassano cause or contribute to the accident?"

It is true that a longshoreman, ship ceiler, or other harbor worker may base his claim against a ship on unseaworthi-

---

1. The following questions were submitted to the jury:

"1. Did any unseaworthiness of the SS Bassano cause or contribute to the accident of which the plaintiff complains? Yes ——— No. ———.

"If question 1 is answered 'No', it is not necessary to answer the other questions.

"2. If question 1 is answered 'Yes', was such unseaworthiness caused by any negligence on the part of Oriole Ship Ceiling Company or of any officer or employee of said Company? Yes ——— No ———.

"3. Did any negligence of the plaintiff cause or contribute to the accident of which he complains? Yes ——— No ———.

"4. Was the accident of which the plaintiff complains the result of risks or hazards which he voluntarily assumed? Yes ——— No ———.

"5. At what amount do you fix the damages sustained by the plaintiff as a result of the accident of which he complains? $———.

"6. If the answer to question 3 is 'Yes', to what extent or degree, expressed percentage-wise, did such negligence of the plaintiff cause or contribute to the happening of the accident of which he complains? % ———."

ness or negligence or both. Pope & Talbot v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143. In many, perhaps most, cases both issues should be submitted to the jury, because in most cases there is some evidence of negligence on the part of the ship other than acts or omissions which caused or contributed to the alleged unseaworthiness. In the instant case, however, there is no claim, and no evidence, that any officer or member of the crew of the Bassano or any agent or employee of the defendant was negligent in any way except in the alleged failure to supply adequate lighting. That was also the only item of unseaworthiness charged by plaintiff against the ship.

The jury were instructed that the owner's duty to provide a seaworthy ship, appliances and equipment is an inalienable, non-delegable and continuing duty, and that proof of an injury caused by an unseaworthy condition is all that is required to impose liability on the shipowner. They were further instructed that this duty is an absolute duty, not dependent upon the owner's negligence, and that the test to be applied in this case is whether the lighting was sufficient to permit the plaintiff to perform his task aboard the ship with reasonable safety. See Ross v. The Zeeland, 4 Cir., 240 F.2d 820, 822.

All the plaintiff had to prove to secure an affirmative answer to the first question was that the lighting supplied by the ship was inadequate and that such inadequacy caused or contributed to the happening of the accident. He did not have to prove that such inadequacy was due to negligence on the part of the ship or her owner. I cannot see how the plaintiff would have been helped in this case if another question had been submitted requiring him to prove all the facts necessary to secure an affirmative answer to the first question, and also to prove that the inadequacy of the lighting was due to negligence on the part of the ship or her owner. Defendant would have been entitled to a directed verdict on any other claim of negligence.

II. Plaintiff complains because the jury were not instructed that "the shipowner is not relieved from liability to a seaman injured as a result of the unseaworthiness of an appliance merely because the unseaworthiness is attributable to the negligence of fellow employees of the injured seaman rather than to the negligence of the owner", as requested by plaintiff's prayer No. 4.

The requested instruction may be true as an abstract proposition, but plaintiff was not a seaman, and the instruction would have been confusing in this case. It was made clear to the jury that if they found that the ship was unseaworthy for any reason their answer to question 1 should be "Yes", and if they found that such unseaworthiness was caused by negligence on the part of the other Oriole employees, their answer to question 2 should also be "Yes".

III. Plaintiff also complains because the court refused to instruct the jury that "the carpenters working on the Steamship Bassano were members of the crew and the shipowner is responsible for the negligence on the part of any of these carpenters other than the Plaintiff", as requested by plaintiff's prayer No. 5, and that "if the Jury finds from the evidence that at the time of the accident, the Plaintiff was working in an unsafe place due to insufficient lighting, then the Jury must find that the ship was unseaworthy even if the Jury find that the insufficient lighting was caused by the moving of a light by a member or members of the carpenter gang other than the Plaintiff", as requested by plaintiff's prayer No. 9.

Plaintiff argues that if he was injured by the negligence of the other employees of Oriole in carelessly raising the draft of lumber out of the hold, or in failing to warn him that the draft was being raised, or in moving the lights so that he could not see that the draft was being raised or that the persons raising the draft could not see what they were doing, the ship would be responsible for such negligence and he would be entitled to recover in this case. Plaintiff's coun-

sel concedes that he can find no decision supporting this proposition, but contends that it follows from the language and rationale of Seas Shipping Co., Inc., v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099. However, a number of cases decided subsequent to Sieracki have rejected this contention. Berti v. Compagnie De Navigation Cyprien Fabre, 2 Cir., 213 F.2d 397; Fireman's Fund Indemnity Co. v. United States, 5 Cir., 211 F.2d 773, certiorari denied 348 U.S. 855, 75 S.Ct. 79, 99 L.Ed. 673; Freitas v. Pacific-Atlantic Steamship Co., 9 Cir., 218 F.2d 532; Crumady v. The Joachim Hendrik Fisser, 3 Cir., 249 F.2d 818; Salmond v. Isbrandtsen Co., Inc., 286 App.Div. 1015, 144 N.Y.S.2d 578. Those decisions seem to me to be sound and to control this case.

Longshoremen and harbor workers have already been given a greater variety of rights and choice of remedies than any other group of workers on land or sea. They have (1) the right to compensation from their employer under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq., (2) the right to sue a shipowner for negligence, (3) the right to sue a shipowner for unseaworthiness, and (4) the right to recover from a shipowner for an injury resulting from unseaworthy equipment provided by their own employer. There is no sound reason to give them the additional right to sue a shipowner for injuries resulting from the negligent acts of their fellow employees which do not make the ship unseaworthy, but which constitute negligent operation of seaworthy equipment by the fellow employees of the plaintiff.

IV. Finally, plaintiff contends that the court should not have submitted to the jury the fourth question: "Was the accident of which the plaintiff complains the result of risks or hazards which he voluntarily assumed?".

In the first place, it must be remembered that the answer to this question was not made a condition of plaintiff's recovery, and was not connected in any way with the answer to the first question, which had to be answered "Yes" before the jury were required to answer any of the other questions. Since the jury answered the first question "No", it did not reach the fourth question.

The jury were told that the question of voluntary assumption of risk comes into play when a person knows that what he is doing constitutes a very definite hazard and yet he voluntarily assumes it; that the question in this case turned on whether the plaintiff staying outside the arc of light after the light was moved constituted a voluntary assumption of risk of injury on his part, whether he should have realized that the risk was there, and whether he voluntarily assumed it.

This is not an action under the Jones Act, 46 U.S.C.A. § 688, and the rules applicable to suits under that act do not apply. Swanson v. Marra Bros. Inc., 328 U.S. 1, 66 S.Ct. 869, 90 L.Ed. 1045, decided on the same day as Sieracki; Continental Cas. Co. v. Thorden Line, 4 Cir., 186 F.2d 992. Nevertheless, assumption of risk is not a complete defense in such a case as this. The Arizona v. Anelich, 298 U.S. 110, 122–123, 56 S.Ct. 707, 80 L.Ed. 1075; Socony-Vacuum Oil Co. v. Smith, 305 U.S. 424, 59 S.Ct. 262, 83 L.Ed. 265; Palermo v. Luckenbach Steamship Co., 355 U.S. 20, 78 S.Ct. 1, 2 L.Ed.2d 3. In Socony-Vacuum Oil Co. v. Smith, supra, the Supreme Court, speaking through Mr. Justice Stone said: "Any rule of assumption of risk in admiralty, whatever its scope, must be applied in conjunction with the established admiralty doctrine of comparative negligence and in harmony with it. Under that doctrine contributory negligence, however gross, is not a bar to recovery but only mitigates damages." 305 U.S. at page 431, 59 S. Ct. at page 266. See also Klimaszewski v. Pacific-Atlantic Steamship Co., 3 Cir., 246 F.2d 875, 877.

The application of those principles to such a case as this has not been specifically and authoritatively stated; therefore I submitted the fourth question of

**484**

fact to the jury, so that if they had answered both question 1 and question 4 "Yes", all questions of law could have been presented to an appellate court in one record. I am satisfied that plaintiff was not prejudiced by the submission of the fourth question to the jury in this case. Their answer to the first question was in accord with the weight of the evidence and with the justice of the cause, and required a judgment for defendant.

The motion for new trial is overruled.