Espedit **OBLATORE**, Libelant,

v.

**UNITED STATES** of America,
Respondent,
and
American Stevedores, Inc., Respondent-
Impleaded.
No. 20597.

United States District Court
E. D. New York.
Feb. 11, 1960.

Diego R. Camarda, Brooklyn, N. Y., Proctor for libelant.

Cornelius W. Wickersham, Jr., U. S. Atty., Brooklyn, N. Y., Proctor for respondent.

Benjamin H. Berman, New York City, Atty. in Charge, Admiralty & Shipping Section, Dept. of Justice, Walter L. Hopkins, Attorney, Admiralty & Shipping Section, Dept. of Justice, New York City, of counsel.

George J. Conway, New York City, Proctor for respondent-impleaded, John F. X. McKiernan, of counsel.

BRUCHHAUSEN, Chief Judge.

The libelant instituted this proceeding in admiralty under the Public Vessels Act, 46 U.S.C.A. § 781 to recover damages for personal injuries, allegedly sustained on March 20, 1957.

The libelant, a longshoreman, was employed by the respondent-impleaded American Stevedores, Inc. He, with three co-workers, was engaged in placing a hatch board at the D deck level of the No. 2 trunk hatch of the USNS Henry Gibbons, moored at the Brooklyn Army Terminal.

The trunk hatch was a rectangular shaft, measuring 24 feet by 20 feet, with vertical bulkheads. At the D deck level there were three access ports on each of the port and starboard sides, each port being above the beam sockets for three "thwartship" beams. A four inch lip

ran along all sides of the hatch at the beam socket level, with a metal pipe grab rail about four feet above the said lip on all sides of the hatch.

Prior to the accident, the longshoreman replaced the three beams at the D deck level. They then caused a hatch board, measuring six feet in width and ten feet in length, weighing approximately 750 pounds, to be lowered to that level for insertion in the starboard corner of the hatch. It was the first hatch board to be installed at that level. It was suspended on a four-legged wire rope bridle, attached to the up-and-down falls of the starboard boom, rigged over the center of the hatch. The libelant and his co-workers pulled the board over to the said corner and out from under the head of the ship's boom in the center of the hatch. The libelant stepped upon the suspended board and attempted to bring it into position by pulling upon the hand rail and forcing the suspended board into position with his feet. The board twisted out from under his feet and he fell to the deck below.

Libelant's main claims of liability are unseaworthiness and failure to furnish him with a safe place to work.

The subject vessel was inspected and approved for the highest classification (A–1) of the American Bureau of Shipping in June and November 1956 and again in July and December 1957. Libelant's expert Ash reluctantly admitted that the inspections included the four inch lip and the grab rails. The Coast Guard inspected in both of those years and accepted her holds and hatches as seaworthy.

Mr. Ash had a limited experience in matters dealing with trunk hatch construction and operations connected therewith. He failed to support his claim that there should have been a larger working area around the trunk hatch. He referred to one of the rules, viz.:

"Where the working space around a hatch is less than 2 feet wide, such provision shall be made as will enable workers to remove and replace in safety all fore and aft beams and thwartship beams used for hatch covering and all hatch coverings."

Mr. Ash conceded that less than two feet clearance is allowable if additional adequate safety precautions are present, also that the handrail was adequate and that the aforesaid Bureau had the right to interpret its own regulations. There were access ports, as previously noted.

The Government established that during the period from April 8, 1956 to December 31, 1958, the trunk had been opened and closed 115 times, without accident. Its expert Keeler, exceptionally well qualified with thirty years experience, involving over 1,500 ships, testified that the vessel conformed to the accepted safety standards of the stevedoring industry.

The libelant intimates that the riding of the hatch cover was an unsafe practice. There is no evidence that the shipowner supervised the longshoreman's operations. Furthermore, they were at liberty to select one of a number of methods for the placement of the hatch board such as using the pipe rail, lip and tag line, spotting the starboard boom directly over the forward corner or using a fair lead or lizard to the falls, deflecting the life to the desired location. The libelant and his co-workers elected to ride the lift to the desired location. The The shipowner had no part in the method selected. It was an operation conducted solely by the longshoremen. Surely they have no just complaint against the shipowner for the failure of a project over which they had sole control. In the case of Berti v. Compagnie De Navigation Cyprien Fabre, 2 Cir., 213 F.2d 397, 400, involving injuries to a longshoreman standing on a hatch cover, the Court said:

"If plaintiff's injuries resulted solely from the manner in which the work was done under American's supervision, [referring to the stevedore] he has no recourse against Cyprien [the shipowner]."

The defendant shipowner is entitled to judgment in its favor. The complaint against American is dismissed. Settle decree and findings on five days' notice.