Edward THOMAS
v.
JAVA PACIFIC LINES (ROYAL ROTTERDAM LLOYD)
v.
BATON ROUGE MARINE CONTRACTORS, INC.
No. 618.
United States District Court
E. D. Louisiana,
Baton Rouge Division.
Dec. 28, 1962.

David W. Robinson, Baton Rouge, La., proctor for intervenor, Fidelity & Cas. Co.

WEST, District Judge.

This action was brought by Edward Thomas, an employee of Baton Rouge Marine Contractors, Inc., for injuries sustained while working as a longshoreman aboard the vessel SS AMPENAN. On April 21, 1961, while the libelant, along with his fellow workers, all longshoremen employed by Baton Rouge Marine Contractors, Inc., was working aboard said vessel he was struck in the head by some dunnage being moved by use of the ship's winch. Libelant sues respondent, the vessel owner, for the injuries resulting therefrom, alleging (1) that the vessel SS AMPENAN was unseaworthy, and (2) that the injuries were caused by the negligence of the officers or members of the crew of said vessel. The case was tried on the admiralty side of the Court on October 15, 1962, and at the conclusion of the plaintiff's case, the Court rendered judgment in favor of respondents and against libelant, dismissing this case at libelant's cost. In connection therewith, the Court now makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1.

At the time of the accident, on April 21, 1961, libelant, Edward Thomas, was an employee of Baton Rouge Marine Contractors, Inc., a stevedoring company located at Baton Rouge, Louisiana.

2.

On the date of the accident, April 21, 1961, libelant was engaged in the course and scope of his employment as a longshoreman, working for Baton Rouge Marine Contractors, Inc., aboard the vessel SS AMPENAN, and was so employed and engaged at the moment of his injury.

3.

There was dunnage on the deck of the vessel, consisting of varied lengths of

Arthur Cobb, Baton Rouge, La., for libelant.

W. Eugene Davis, New Orleans, La., proctor for respondent.

boards, which libelant and his fellow workers were in the process of moving from one location to another aboard said vessel. The dunnage was lying on the deck in bundles, with a rope sling around each bundle, the bundles having been made up and the rope sling placed around them some time previously by members of the crew of the vessel.

**4.**

At the time of the accident and injury, the bundles of dunnage were being lifted by the ship's winch, which was being operated by an employee of Baton Rouge Marine Contractors, Inc. As a bundle of dunnage was lifted by the winch, a board slipped out of the sling and fell, striking the libelant on the head.

**5.**

That before the bundle of dunnage was lifted by the winch operator, the line from the winch was attached to the sling by an employee of Baton Rouge Marine Contractors, Inc., and the sling was placed in proper position, tightened and adjusted by that employee.

**6.**

That no officer or member of the crew of the vessel SS AMPENAN was present during this operation, and no portion of this operation was under any control or supervision of any officer or member of the ship's crew.

**7.**

That before the bundle of dunnage was lifted by the winch, one of the employees of Baton Rouge Marine Contractors, Inc., Lawrence Bessis, told libelant on three different occasions to get out of the way so that he would not be struck by the dunnage being lifted by the winch. The operator of the winch also warned the plaintiff to get out of the way on at least one occasion just prior to lifting the bundle of dunnage.

**8.**

There was no evidence whatsoever introduced by libelant to in any way even indicate that the rope sling being used, or the ship's winch, or any other equipment or gear belonging to the vessel was in any way defective or unseaworthy.

**9.**

There was no evidence whatsoever introduced to show that the winch operator acted negligently in any way while picking up the dunnage with the ship's winch.

**10.**

The evidence showed only that libelant, despite frequent and timely warnings to remove himself to a place of safety, failed to do so.

### CONCLUSIONS OF LAW

**1.**

Jurisdiction over this matter was found to be present under the admiralty jurisdiction conferred upon this Court by 28 U.S.C.A. § 1333.

**2.**

There was no evidence of any kind introduced during the trial of this case by the plaintiff to even so much as indicate in any way that the shipowner or any member of the crew of the ship involved were in any way guilty of any negligence causing or contributing to the damages sustained by the plaintiff. On the contrary, there was positive evidence presented by the plaintiff and his own witnesses, establishing the fact that neither the shipowner nor any officer nor member of the crew of the vessel were in any way involved in this incident. Hence, as a matter of law, the plaintiff having failed to carry the burden of proving negligence on the part of the shipowner, or any member of the crew of the vessel, his claim for damages based upon negligence must fall.

**3.**

Under the Maritime Law a shipowner has an absolute and nondelegable duty to supply and maintain a seaworthy vessel. Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90

L.Ed. 1099. Also, as stated in Sieracki, the doctrine of unseaworthiness applies to the ship, its gear, equipment and appurtenances. In other words, the obligation to supply a seaworthy vessel is not limited to structural defects of the hull, but applies also to the gear, equipment and appurtenances of the ship.

#### 4.

That the warranty of seaworthiness extends to longshoremen while in the performance of their duty aboard a ship is, of course, too well settled to require citation of authority. However, in order for the plaintiff to recover for unseaworthiness, he must carry the burden of proving that the vessel was in some manner unseaworthy. The warranty of seaworthiness is not breached where the condition causing the injury is due solely to the carelessness of the plaintiff's fellow employees. Manhat v. United States, 2 Cir., 220 F.2d 143; Freitas v. Pacific-Atlantic SS Co., 9 Cir., 218 F.2d 562. Also, the obligation of the shipowner to supply a seaworthy vessel is not extended so far as to require that seaworthy appliances be kept from being used in a negligent manner. Imperial Oil, Ltd. v. Drlik, 6 Cir., 234 F.2d 4.

#### 5.

Where the longshoremen, including the plaintiff, in the performance of their work, were using ship's equipment which was in all respects seaworthy and suitable for the use for which it was intended, in a negligent manner, such use of seaworthy equipment does not constitute unseaworthiness on the part of the ship. The testimony in this case was unequivocally to the effect that the winch being used and the sling attached to the dunnage being moved were in good condition, with no defects being noted by anyone. The fact that this seaworthy equipment may have been improperly used by the fellow employees of the plaintiff to move the dunnage cannot support a claim of unseaworthiness on the part of the vessel. Harrell v. Lykes Bros. S.S.

Co., Inc., D.C., 165 F.Supp. 125; Billeci v. United States, D.C., 185 F.Supp. 711; Blakenship v. Ellerman's Wilson Line, New York, Inc., D.C., 159 F.Supp. 479.

#### 6.

There being absolutely no evidence of any kind introduced into this record by the plaintiff to show any unseaworthy condition on the part of this vessel or its gear, equipment or appurtenances, the conclusion is inescapable that the plaintiff has failed completely to carry the burden of proving his claim for damages, and hence, respondent is entitled to a judgment in its favor and against libelant dismissing this case at libelant's cost.