COLLINS et al. v. SAN ANTONIO FOOD PRODUCTS & PRODUCE CO.

No. 11512.

Court of Civil Appeals of Texas.
San Antonio.

June 13, 1945.

Rehearing Denied July 18, 1945.

Neil E. Beaton, of San Antonio, for appellants.

Conger & Baskin, of San Antonio, for appellee.

MURRAY, Justice.

This suit was instituted by Joe Alvarado, Joe Gomez and H. V. Garcia, doing business under the trade name of San Antonio Food Products & Produce Company, against Ed J. Collins and Cyrus Weller, who operate a second-hand automobile business on South Flores Street in San Antonio, Texas, seeking to recover the sum of $500 paid by plaintiffs to one Frank Roberts, an alleged agent of the defendants, as a down payment upon a second-hand truck. Plaintiffs contend that Frank Roberts had apparent authority to accept such down payment, while defendants deny that he had any authority to do so. Frank Roberts absconded with the $500.00 and no part of it was ever received by either of the defendants.

The trial was before the court without the intervention of a jury and resulted in judgment for plaintiffs in the sum of $500, from which judgment defendants have prosecuted this appeal.

Appellants' statement of the case, which is admittedly substantially correct, is as follows:

"Joe Gomez, one of the appellees, testified that on behalf of their co-partnership, he went to the place of business of Ed J. Collins to buy a truck on January 11, 1944. He talked to Fred Nuetze, whom he found in charge of the lot. Nuetze told him that Collins had a truck for sale, but that he could not sell it because the boss wasn't there, and he told him the name of the boss was Ed Collins. He suggested that Gomez come back in the afternoon. Gomez went back that afternoon and was told by Fred Nuetze that the boss wasn't back yet. Gomez said 'I couldn't make the deal because the boss wasn't there.' Gomez went back the next day (January 12th), in the morning and was again told by Fred Nuetze to come back in the afternoon and wait for the boss. Gomez went back about 3:00 o'clock p.m. but Gomez said he 'did not talk with Fred at that time because another fellow met me.' His name was Frank Roberts. Gomez had not met this Frank Roberts before and had never had any dealings with him, but Frank told him that he would sell him the truck and that the price was $650.00. Frank Roberts demonstrated the truck for him. Henry Garcia went along at that time. Gomez told Frank Roberts that he wanted different tires on it, and agreed to pay Frank Roberts $650.00 for it if he would put on bigger tires. It had 6.50 x 20 tires on it and he wanted 7.50 x 20 tires all the way around. Gomez testified that Fred Nuetze and Frank Roberts talked with him, and promised to put on the larger tires. Gomez told Frank Roberts that he would make a deposit of $100.00. Frank Roberts left Gomez and talked to Fred, out of the presence and hearing of Gomez and Garcia. When Frank Roberts came back to Garcia and Gomez, he said that the deposit of $100.00 was not sufficient, and that the deposit was supposed to be $500.00 cash, no checks. It was then about 5:00 o'clock and Gomez did not have more than $100.00 with him, so Gomez gave him the $100.00 he had in his pocket and Roberts gave him a receipt for it. Then Gomez went to Joe Alvarado and got the rest of the money. Joe Alvarado, Henry Garcia and Joe Gomez went back to the lot together. Fred Nuetze was not present at that time. He was in the office on the lot. The appellees talked to Roberts about 35 or 40 feet away from the office. When they gave Roberts the other $400.00, they asked for an 'official receipt.' Roberts went to the office to get the book. He got the receipt from a book that was lying on the counter in the office in Mr. Collins' place of business, and made it out at the truck away from the office. He gave the yellow copy to Gomez and kept the white copy. Nuetze was in the doorway at the time the receipt was written. They paid Roberts the entire $500.00 in currency, and Roberts told Gomez to come back the next day and get the truck. Frank Roberts said

that Gomez could buy the truck and Mr. Collins would give him the papers the next day, and even if Mr. Collins wasn't there, he, Frank Roberts, would give him the papers when Mr. Collins' secretary came. Mr. Nuetze was not present at that time, but a fellow called Jack was nearby. He said that when they were talking with Roberts, Fred was 'down at the lot taking a tire off a wheel.' 'Fred wasn't there when they closed the deal. Fred was in the office.' He did not hear Frank talk to Fred, but he 'saw Fred shake his head and say, "no".' When asked about his testimony given by deposition, viz: 'Fred wasn't there when you brought the money, was he?' A. 'No, sir. He wasn't in the office.' Q 'You didn't have any talk with Fred about making the deal at all the second day, did you? You talked to Frank, didn't you?' A 'Yes, sir.' Q 'Is that right?' A 'That is right.'

"The next day Gomez went back for the truck. He found no one working on it, and he talked to Fred and asked him what about it. Fred said he didn't know anything about it. Then Gomez told Fred, in the presence of 'another man who was working for Mr. Collins,' (Jack), that he had given Frank Roberts $500.00 as a deposit on the truck the night before. Fred said he didn't know anything about it. Jack said he saw Frank get the money from Gomez the night before. Then Fred Nuetze and Gomez went to look for Frank Roberts and learned that 'the fellow' (Roberts) 'left the night before about 11:30, and that was the last time he had been seen.'

"Gomez said that he had made a demand on Ed J. Collins for the delivery of the truck or the return of the $500.00; that he offered to pay the $150.00 balance, but 'they refused to deliver the truck or to return the $500.00.'

"Gomez' partners, Garcia and Alvarado, corroborated Gomez' version. All three agreed that they had never done any business with anyone at the lot in question before the time that Gomez went there on January 11th. None of the plaintiffs had ever known Ed Collins or Cyrus Weller, his partner. They did not know who owned the lot. There was a sign on the lot, viz: 'Citizen's Auto Park.' Ed Collins admitted that he did business as a sole trader in that name. 'Investor's Salvage Company' was the registered trade name of Ed J. Collins and Cyrus Weller. The titles to the trucks were held in that name. Collins denied that he had received any money from Frank Roberts or anyone else in this deal; that he had given Frank Roberts no authority, except as a mechanic helper to remove parts which had been sold from off junked equipment and to generally assist the mechanic, but that Frank Roberts never had any authority to accept money or make sales of any kind, and that he never knew that Frank Roberts had ever held himself out as having any authority to act for Collins or Weller in anything. The testimony of Weller and Fred Nuetze corroborated Collins' testimony. William Turner testified that he saw the money passed between Gomez and Roberts; that the transaction took place 100 feet from the office; that Nuetze was not there, and that immediately after receiving the money Frank Roberts asked Turner to take Jack Robertson, another employee, home. Turner said Jack Robertson saw Frank Roberts get the money. When Frank Roberts asked Turner to take Jack Robertson home, Roberts said that Fred Nuetze was not there.

"Appellees sued appellants for wrongfully withholding the money which they had paid to Frank Roberts in purchase of a truck. They did not claim that appellants ever actually received the money. Appellants answered by sworn denial of agency and all the other elements of plaintiffs' petition. Plaintiffs then, by supplemental petition, charged that defendants were estopped to deny Roberts' agency because 'from all appearances' Roberts was authorized to receive money in payment for automobiles, etc. The case was tried by the court without a jury, and judgment rendered for plaintiffs as sued for. Defendants appealed from the judgment. No findings were requested or filed by the trial court."

We have concluded that Frank Roberts did not have apparent authority to accept the down payment of $500 on the truck so as to bind his principals. There is no contention that Frank Roberts had actual authority to accept this payment. Frank Roberts absconded with the money, and never paid any part of it to appellants, so the question of ratification by acceptance of benefits of any kind is not involved.

Apparent agent or ostensible agent has been defined as follows: "An 'appar-

ent agent' or 'ostensible agent' is one whom the principal, either intentionally or by want of ordinary care, induces third persons to believe to be his agent, though he has not, either expressly or by implication, conferred authority on him." Vol. 3, Words and Phrases, Perm.Ed., p. 670.

■ Apparent authority is defined in same authority, Vol. 3, p. 671, as follows: " 'Apparent authority' of an agent is that authority which he appears to have by reason of the actual authority which he has, and which he exercises with the knowledge and ratification of the principal."

■ Estoppel, as it relates to "apparent authority," has been defined as follows: "When one, by his words or conduct wilfully causes another to believe the existence of a certain state of things, and induces him to act on that belief, so as to alter his own previous position, the former is concluded from averring, against the latter, a different state of things, as existing at the same time." See Love v. Barber, 17 Tex. 312.

In 2 Tex.Jur. p. 425, § 39, it is stated: "The doctrine of apparent authority embodies a principle of the common law which has been called 'the foundation of the law of agency.'. This doctrine may be stated as follows: When a principal has placed an agent in such situation that a person of ordinary prudence, conversant with business usages and the nature of the particular business, is led to believe that the agent has authority to perform acts usually done in a business of that kind one dealing with the agent is justified in presuming such authority to have been given. Having by the creation of the agency bestowed upon his representative a certain character, the principal will not be heard to assert, as against third persons dealing upon the faith of that character, that he did not intend to confer so much authority. Such persons have the right to conclude that the principal intended that the agent should have and exercise those powers which properly and legitimately belong to the character in which he holds him out. As the rule has been tersely put: 'A principal is equally bound by the authority which he actually gives, and by that which by his own act he appears to give,' and an act of the agent within the scope of his apparent authority 'is as binding on the principal as if the agent was actually possessed of the authority.' "

■ The above legal principle when applied to the facts of this case leads us to the conclusion that appellants, Collins and Weller, had done nothing to lead appellee to believe that Frank Roberts had authority to sell trucks and accept cash deposits on such sales, and they certainly have done nothing which would in law estop them from denying Frank Roberts' authority to so act for them. Appellees had no prior dealings with Roberts. They had never seen him sell a truck or offer a truck 'for sale. One of them had seen him take the money for some used part and turn it over to Fred Nuetze. This was not shown to have happened in the presence of either one of the appellants. Frank Roberts was dressed in a mechanic's uniform and appellees had seen·him working around there. Fred Nuetze was left in charge and he was the man in the office. It occurs to us that appellants did not place Frank Roberts in such situation that appellees, if they had used ordinary prudence, would have been led to believe that Frank Roberts had authority to sell them a truck and accept a cash deposit,· or part payment, of $500. Especially is this true when on three prior occasions Fred Nuetze, whom they found in charge of the office, had told them no one could sell them a truck, and that they would have to wait until the boss returned. After they received this information there is simply no excuse for their paying $500 to Frank Roberts. It is true that in answer to a leading question Gomez, one of the appellees, testified that what Fred said was that he couldn't deliver the title to the truck until the boss returned, but Gomez thereafter reiterated that Fred told him that he could not sell the truck, that he could make no deal, and that he would have to wait until the boss got back.

Before appellants can be required to reimburse appellees for the money which they paid to. Frank Roberts appellants must be shown to have held out Frank Roberts as a truck salesman in such a way as to mislead appellees, even though they acted with care and prudence.

'We haven't found a case in Texas directly in point, but the case of Florence Auto Co. v. McBeth, 75 Colo. 355, 225 P. 816, by the Supreme Court of Colorado, is in point.

The judgment of the trial court will be reversed and judgment here rendered that appellees take nothing and pay all costs of this court and the court below.

Reversed and rendered.