**WESTERN WOODS PRODUCTS COMPANY, Appellant,**

v.

**W. D. BAGLEY, Appellee.**

No. 6755.

Court of Civil Appeals of Texas.

Texarkana.

Oct. 7, 1954.

Rehearing Denied Dec. 30, 1954.

Sam G. Croom, Houston, for appellants.

M. M. Guinn, Rusk, for appellee.

WILLIAMS, Justice.

W. R. Flock and J. A. Smith, a partnership doing business as the Western Woods Products Company of Alto, Texas, the defendants below, on October 22, 1952, leased and received delivery from plaintiff, W. D. Bagley, the owner, one certain piece of machinery and attachments known as a Newman (sawmill) Planer. The lease agreement of above date, evidenced in writing, provided for payment of rentals to lessor based on number of feet of lumber lessees planed on the machine. Sections 4 and 6 of this agreement provide that:

4. "Lessee also will keep all and singular the said planer and all attachments thereto in such repair as the same are in at the commencement of the term, or may be put

in by the Lessee during the continuance of this lease, reasonable use and wearing thereof only excepted. It is agreed that any such repairs or new parts of said planer as may be made by the Lessee as well as any alterations, additions, fixtures and improvements, whether temporary or permanent in character, shall be the property of the lessor from the time such repairs, new parts, alterations, additions, fixtures or improvements were so made."

6. "Lessee agrees that Lessee will, at the expiration of the term, peaceably yield up unto the Lessor at Rusk, Texas, all and singular the planer, with such additions, attachments, and fixtures now or hereinafter placed upon said planer and in as good condition and repair as when received, reasonable wear and tear only excepted."

While above lease agreement was in full force and effect a fire which originated in and upon lessees' sawmill plant around 3:45 a.m. on December 31, 1952, destroyed above planer, along with a building or large shed and other machinery situated therein.

Plaintiff pleaded specifically above provisions of Sec. 4, and lessees' inability to redeliver the planer because of its loss by fire, and sought judgment for $2,500 as alleged to be its fair cash market value. Defendants also pleaded that the planer had been destroyed by fire, and in connection therewith further answered: " * * * that the destruction of said planer by fire as herein alleged, was not the result of, nor was such destruction proximately caused by the negligence of the defendants, or either of them, or by any act of omission or commission of the defendants, or either of them." Plaintiff did not in any pleading join issue with above defense so asserted, but this issue was in the evidence vigorously controverted. In a trial to the court of the cause that had been filed in February 1953, the court awarded plaintiff judgment against the defendants for $2,500, the alleged fair cash market value of the planer.

■ The delivery by the owner and the receipt of the machine by the lessee under the agreement created the relationship of bailor and bailee for their mutual benefit. 8 C.J.S., Bailments, §§ 1, 28; Cleaver v. Drake-Brannum Const. Co., Tex.Civ.App., 195 S.W. 206, 207; 5 Tex.Jur. p. 1017.

■ In Cleaver v. Drake-Brannum Const. Co., supra, the court in the original opinion sustained the bailee's liability based on an agreement to return the property, applying "the sound maxim, that as a man binds himself so shall he be bound". On rehearing, the court withdrew the original holding in obedience to the decisions cited on page 208, which appear to be the settled law, at least in Texas, and sustained the claim there urged that the provision in the written agreement, substantially the same as set out in above Sec. 6, namely, the agreement to return the machinery "in as good condition and repair as when received, reasonable wear and tear only excepted," did not enlarge the common law liability on the part of the bailee. Under such relationship the "bailee is bound only to ordinary diligence" under the common law, 5 Tex. Jur. (Bailment), Secs. 13, 15, or as expressed in 8 C.J.S., Bailments, § 27, page 269, "Where a bailment is for mutual benefit, the bailee, in the absence of special contract, is held to the exercise of ordinary care in relation to the subject matter thereof and is responsible only for what has been termed ordinary negligence * * *."

■ Upon proof that the inability of redelivery of the machine was due to its destruction by fire, then as stated in Ablon v. Hawker, Tex.Civ.App., 200 S.W.2d 265, 267, quoted with approval in Mustang Aviation v. Ridgway, Tex.Civ.App., 231 S.W.2d 677, 678, w/r: " 'We think it is settled in this State that in suits on contracts of bailment for hire, where the property is lost or damaged by fire or theft, no presumption of negligence is imputed to the bailee, and that the burden of proof to show bailee's negligence resulted in such loss or damage, rests on the bailor.' " See also Trammell v. Whitlock, 150 Tex. 500, 242 S.W.2d 157, 160; Exporters' & Traders' Compress & Warehouse Co. v. Schulze, Tex.Com.App., 265 S.W. 133.

The mill ceased operation each day at 4:30 p.m. Cliff Adams, the night watchman, with hours on duty from 4:30 p.m. to 8:30 p.m., did during such hours on December 30th, the evening previous to the fire, make several rounds of inspection of the premises, as required by bailee to "watch after the fire and watch out for people toting off stuff," and to clean up the premises. This employee discovered the building afire while he was in bed at his home some 75 yards away. He arrived on the premises within two or three minutes after his discovery of the fire according to his estimate. No other person arrived during the progress of the fire.

The building which housed the planer involved, together with other machinery used in this box factory of bailee, was of wooden construction, perhaps 25 years of age. Its floor, also of wood, was three or four feet off the ground. The building contained one water hydrant and about 150 or 200 feet of 1½ or 2-inch fire hose, both located near the center of the building. Bailees maintained no other hydrant or other equipment for fire protection in the building or on their 2-acre plot on which above building and others were situated.

The blaze was around or underneath the fire hose in the center of the building upon Adams' arrival. He further testified he could have extinguished the fire if the blaze had not prevented him from using the fire hose. In his language, "a pretty good pile of sawdust was around fire hose; the fire started around that sawdust pile, around that fire hose * * * the floor was on fire; fire was coming out underneath the floor, and the wind blew it right back to the fire hose; the sawdust was not on fire, it was wet." The evidence reflects by other witnesses that rain had fallen in the afternoon and night of the fire and this had wet the sawdust and at least parts of the floor of this partly open building; and further, that the lay of the ground underneath the floor would retain and on the occasion did contain water. The upright or vertical hydrant was equipped with a horizontal piece of pipe, the latter being described by a witness as a spigot. In drawing water to drink and for other purposes about the plant, the carelessness of the employees kept the place wet and soaked in the area of the hydrant. The evidence does not disclose where the fire hose was attached, if in fact it was attached at the outbreak of the fire.

The workmen who manned the various machines in the building ceased operation at 4:30 p.m. Adams, the night watchman, then came on duty and worked until 8:30 p.m. when he went home. Such had been his hours of employment for several months. The building was unattended by any employee between 8:30 p.m. and 4:15 a.m., approximately eight hours, when the fire was discovered.

The former owners and operators had maintained on the premises night watchmen around the clock. The former owners had maintained two fire hydrants with fire hose, one in the center of the building and one outside, adjacent to the building, and had forbidden the employees to use the one in the building "for the purpose of drinking water." The plant had been equipped with a blower system to take off and out of the building sawdust and shavings. It appears that this system was removed from the building before the bailees acquired the building and another one was never installed. Bailee required the employees to sweep up the sawdust at hour intervals and scoop same into boxes to be emptied into a dolly and then carried and emptied outside the building. They asserted under the evidence offered that this was done on the day prior to the fire and further that the character of the operations in the building did not produce any shavings.

"The authorities uniformly declare that where the case was tried without a jury and no findings of fact or conclusions of law were filed by the trial judge, as here, the judgment should be affirmed if there is evidence to support it upon any theory of the case. In the absence of specific findings of fact by the trial court, every issue raised by the testimony must be resolved in support of the judgment." 3B Tex.Jur. (Appeal & Error), Sec. 873.

The evidence, when measured by above rules, does not warrant this reviewing court to disturb the implied findings of the trial court necessary to support the judgment, namely, that the bailor proved by a preponderance of the evidence that the fire which destroyed the planer was caused by bailee's passive negligence. It is without question that the fire was a proximate cause of the loss of the machine. It was within the province of the trial court, the trier of the facts, to conclude under all the facts and circumstances that the failure to maintain a blower system, customary in such a plant; to permit the accumulation of the pile of sawdust in and around the only fire hydrant on the premises; the failure to maintain a fire hydrant on the outside of the building; the failure to maintain a night watchman and permit this large building of wooden construction to remain unattended for approximately eight hours prior to the fire constituted passive negligence.

The judgment is affirmed.