Anthony ALBANESE, Plaintiff-Appellee,

v.

N. V. NEDERL. AMERIK STOOMV. MAATS., Defendant-Appellant and Third-Party Plaintiff-Appellant,

v.

INTERNATIONAL TERMINAL OPERATING CO., Inc., Third-Party Defendant-Appellee.

No. 212, Docket 29155.

United States Court of Appeals
Second Circuit.

Argued Dec. 3, 1964.

Revised Opinion June 15, 1965.

Edmund F. Lamb, New York City (Purdy, Lamb & Catoggio, William E. Fay III, New York City, of counsel to Schaffner & Furey, New York City, on the brief), for defendant-appellant and third-party plaintiff-appellant.

Joseph Arthur Cohen, New York City (Alexander, Ash & Schwartz, and Sidney A. Schwartz, New York City, on the brief), for third-party defendant-appellee.

Before FRIENDLY and SMITH, Circuit Judges and BLUMENFELD, District Judge.*

SMITH, Circuit Judge.

Albanese, a longshoreman in the employ of stevedore International Terminal Operating Co., Inc., injured by monoxide gas fumes while working in the hold of the vessel M. S. Schiedyk, owned by N. V. Nederl., brought action for damages against the shipowner, which impleaded I. T. O. as third party defendant. After trial to the jury in the United States District Court for the Southern District of New York, Irving Ben Cooper, Judge, judgment was entered on verdict in favor of plaintiff against N. V. Nederl. and in favor of the stevedore dismissing the third party complaint, and N. V. Nederl. appeals. We find error in the charge on the principal action and on the claim over, and reverse and remand for new trial.

Plaintiff was a member of a gang of longshoremen working in the lower No. 2 hold of the Schiedyk. From 8:00 a. m. to 10:45 a. m. on the day of plaintiff's injury a gasoline powered hilo owned by I. T. O. was working in this hold. About 10:45 a. m. a second gang began to work in the after half of the upper 'tween deck of No. 2 hold, employing a second hilo. The ship had a ventilating system often used when hilos were working in the holds, which was not turned on on the day in question prior to plaintiff's injury. It was raining and a hatch tent partly covered the upper hatch opening. The hatch between the 'tween deck and the lower hold was partly covered with hatch

Robert Klonsky, Brooklyn, N.Y. (Philip F. DiCostanzo, Brooklyn, on the brief), DiCostanzo, Klonsky & Sergi, Brooklyn, N.Y., for plaintiff-appellee.

* Sitting by designation.

boards. I. T. O. had portable blowers at the pier, none of which were in use at No. 2 hold. There was evidence that about 10 or 15 minutes after the second gang entered the hold, men complained of fumes from the hilos and the winch operator and signalman at the hatch asked a ship's officer to turn the blowers on. There was evidence that a few moments later the hatch boss told the ship's officer to turn the blowers on or the men would walk out, and that the ship's officer said to keep on working, that he would turn the blowers on. When Albanese collapsed sometime between 11:15 and 11:30 a. m. the blowers had not been turned on and the men left the hatch.

 If the hatch bosses some time between 10:55 a. m. and 11:05 a. m. asked a ship's officer to turn on the ship's ventilating system and he agreed to do so, a finding of defendant's negligence would be justified. The charge, however, allowed the jury also to find against the defendant on the basis of negligence (as distinguished from unseaworthiness) even if it did not have actual knowledge of an unsafe condition in the hold, if the jury determined that such a condition existed for a sufficient length of time to charge the shipowner with notice of it and the shipowner did not act to prevent injury. This was erroneous, for when a shipowner hires a qualified stevedore to load the vessel the standard of due care does not require that he actively supervise the stevedore's work or that he take available steps to rectify a dangerous condition created by the stevedore which he does not know to exist. As pointed out in Berti v. Compagnie de Navigation, etc., 213 F.2d 397, 2 Cir. 1954, to lay down a contrary rule, which on the facts here would mean that mere knowledge of the use of hilos would create a duty on the part of the owner to turn on the ventilators even though he had no knowledge that the hold had become an unsafe place to work, would be to confuse the concept of unseaworthiness with that of negligence. Cf. Filipek v. Moore-McCormack Lines, Inc., 258 F.

2d 734, 737, 2 Cir. 1958, cert. den. 359 U.S. 927, 79 S.Ct. 605, 3 L.Ed.2d 629. Contrast Halecki v. United New York and New Jersey Sandy Hook Pilots Association, 282 F.2d 137, 2 Cir. 1960; 302 F.2d 840, 2 Cir. 1962, where the shipowners themselves required the use of the deadly cleaning agent and were held under a duty of care in selecting competent contractors to work with it, or supervising its use.

 The jury had been instructed that the owner would be liable, with or without knowledge, if the ship had become unseaworthy because of a dangerous condition created by noxious fumes in the hold. This was correct, and if the verdict was reached on this theory, the verdict against the owner would be sustained, if the trial was otherwise free from error. However, the erroneous charge on negligence may have been the basis of the verdict. The jury's attention was directed in the charge to negligence in the absence of actual notice. Liability, if present in the absence of knowledge in this case, is based not on a duty of care, but on absolute liability for unseaworthiness, actual unfitness of the vessel for the use to which it is being put. Unfortunately, we cannot tell from the general verdict whether it was based on a finding of unseaworthiness, on a finding of failure to turn on the ventilators after agreeing to do so, or on the erroneous charge on constructive notice as a basis for a finding of lack of care. On the issue of whether an unsafe condition in fact existed, there was evidence of the men's complaints, and of course of plaintiff's injury. This might well have supported a verdict based on unseaworthiness. However, we do not find this evidence so plainly determinative of the issue that it required such a verdict. We cannot, therefore, ignore the instructions on negligence and direct a verdict for plaintiff on the ground of unseaworthiness. In view of the alternative claims here, special interrogatories to the jury might have been helpful in determining the basis of the verdict and the court may well consider their use on retrial.

484

Another claimed error is the charge that no contributory negligence on the part of the plaintiff had been shown. While the better practice is to let this question go to the jury, LaGuerra v. Brasileiro, 124 F.2d 553, 2 Cir. 1942, we cannot say that the ruling was error in the circumstances of this case where evidence was lacking that Albanese knew of the complaints or appreciated the danger on the day of his injury, or indeed had any real choice of action if he had. There is, however, one other ruling which was erroneous on the proof here. That is the instruction that the Safety and Health Regulations for Longshoring were binding on the shipowner, in spite of the excluding clause of § 9.2(b) [1] and the lack of any testimony as to what the concentration of carbon monoxide in the hold in fact was. Ordinarily, such regulations of stevedoring practices are not relevant to the issues involved in the claim against the shipowner, and clearly could only confuse the issue here, where, although it was stipulated that the ship's blowers were adequate if used, there was no evidence from which the jury could determine whether the level of gas concentration at which the stevedore was forbidden to work without blowers had in fact been reached.

We find error also in the instructions on the claim over. The jury could certainly find that the stevedore did not fulfill his duty of workmanlike service under his warranty to the owner in permitting the men to continue work in the hold after the stevedore had notice of the conditions in the hold, had requested the blowers to be turned on and the request was not promptly complied with. Nicroli v. Den Norske, 332 F.2d 651, 656, 2 Cir. 1964. The instruction that the request to the ship's officer was sufficient to absolve the stevedore was error. Misurella v. Isthmian Lines, 328 F.2d 40, 2 Cir. 1964. Whatever fault of a shipowner may be said to relieve the stevedore of his duty under the warranty, it seems plain that it must at the least prevent or seriously handicap the stevedore in his ability to do a workmanlike job. Merely concurrent fault is not enough. Misurella, supra. Weyerhaeuser S. S. Co. v. Nacirema Operating Co., Inc., 355 U.S. 563, 567, 78 S.Ct. 438, 2 L.Ed.2d 491. There was no evidence of active "hindrance" by the ship. I. T. O. could either have ordered the men out of the hold when it discovered that conditions were becoming dangerous and the ship's blowers were not turned on, or it could have used its own portable blowers.

The judgment is set aside, on both the complaint and the claim over, and the case is remanded to the District Court for trial.

---

1. § 9.2 SCOPE AND RESPONSIBILITY

(a) The responsibility for compliance with the regulations of this part is placed upon "employers" as defined in section 9.3(c) of this part.

(b) It is not the intent of the regulations of this part to place additional responsibilities or duties on owners, operators, agents or masters of vessels unless such persons are acting as employers, nor is it the intent of these regulations to relieve such owners, operators, agents or masters of vessels from responsibilities or duties now placed upon them by law, regulation or custom.