**REDERI A/B NORDSTJERNAN, etc., aka Johnson Line, Appellant,**

v.

**CRESCENT WHARF & WAREHOUSE CO., Appellee.**

**No. 21161.**

United States Court of Appeals Ninth Circuit.

Feb. 13, 1967.

Gordon K. Wright, Francis J. MacLaughlin, of Lillick, Geary, McHose & Roethke, Los Angeles, Cal., for appellant.

John Scott Matthew, of Sikes, Pinney & Matthew, Los Angeles, Cal., for appellee.

Before BARNES, JERTBERG and DUNIWAY, Circuit Judges.

BARNES, Circuit Judge:

Appellant was sued by one Bojorquez for injuries sustained aboard appellant's vessel M/S ROSARIO. Appellant im-

pleaded the appellee on third-party complaint. Trial to a jury was had, resulting in a verdict and judgment in favor of Bojorquez against appellant, but denying appellant indemnification against appellee. The trial court had jurisdiction under 28 U.S.C. § 1332, and our jurisdiction rests on 28 U.S.C. § 1291.

Appellant's cargo vessel M/S ROSARIO arrived in Los Angeles in November of 1963 and was turned over to appellee, which is a stevedoring company, to discharge cargo to be landed in Los Angeles.

Of particular interest here is the discharging of cargo from the starboard lower hold #5. The construction of the starboard lower hold #5 is of prime importance. Basically it is a long rectangular area. Along the length of the port side of the hold, however, there is a housing (about 7 feet high and 6 feet wide) containing the vessel's propeller shaft. There is a similar housing along the starboard side of the hold enclosing a fuel tank. The effect of these two housings is to create "shelves" along the length of the hold. The area between the shelves in the hold is referred to as the "well".

On the day in question, the hold contained a number of rolls of newsprint for Los Angeles and some other cargo destined for San Francisco. The rolls of newsprint varied in size but were approximately five feet high and four feet in diameter, weighing 1500 to 1600 pounds. In the well of the hold a number of the rolls had been placed on end. On top of those rolls a wooden flooring had been laid. Since the shelves were about seven feet above the deck of the hold and the flooring had been laid on rolls five feet high, the flooring on the rolls in the well was about two feet below the level of the shelves. On the shelves themselves more rolls of newsprint were standing on end. On top of the flooring in the well even more rolls had been stowed.

The unloading process began by removing the San Francisco cargo which was on top of the Los Angeles-bound newsprint. Next the rolls of newsprint on top of the flooring in the well were removed. The rolls were removed by use of the ship's winch which lifted them through the hatch of the hold. Due to the equipment being used and the manner in which the cargo had been stowed, it was necessary to topple the rolls over onto the rounded side before they could be lifted. It is around the method of toppling the rolls that this controversy centers.

Due to the loading of the cargo, the mechanical device, called a "squeeze jitney", could not be used. Instead, men using what is called a "frisco puller" or "frisco rig" manually toppled them. A "frisco puller" is nothing more than a pair of long metal prongs, at the end of each of which is a smaller prong extending downward. Ropes of about ten or twelve feet are attached to the long prongs. This claw-like tool is placed over the roll so that the smaller prongs engage the opposite side of the roll near the top. When the ropes are pulled the roll is tilted over until it finally falls onto its side.

In the instant case men standing on the flooring in the well (about two feet below the level of the shelves) would tilt a roll on a shelf over onto its edge until it was about to topple over. Since the rolls have a tendency to bounce when toppled from any height, the men wanted to be as far from the roll as possible when it landed. They were safest when they were forward in the well, there being less room aft in the well. The procedure adopted was that the stevedore hatch boss, a Mr. Henriksen, watching safely from aloft, would shout to the men pulling when the roll began to topple. The men would then run forward, under the falling roll, to safety. One of the men was the plaintiff below, Bojorquez. About 4:15 that afternoon, as the work was progressing, Henriksen left the hold and went to do some paperwork, meaning that he no longer shouted a warning to the men pulling. After he left, a roll was toppled which struck Bojorquez as he tried to run beneath it.

Bojorquez brought his suit against the appellant based on unseaworthiness and

negligence, and the appellee was impleaded. The jury returned a verdict in favor of Bojorquez which is unchallenged here. Indemnity against the appellee-stevedoring firm, however, was denied, which prompted this appeal.

Two errors have been specified by the appellant as grounds for reversal, the giving of a certain instruction proposed by the appellee and the denial of a directed verdict and judgment notwithstanding the verdict.

The court instructed the jury:

> "If you should find that the vessel or its cargo was in such condition that the stevedore was prevented or seriously handicapped in its ability to discharge the vessel in a workmanlike manner and with reasonable safety, then the shipowner is in fact precluded from recovering from the stevedore company." (R.T. pp. 259–60.)

Presumably the court denied a directed verdict and judgment notwithstanding the verdict because it believed that the foregoing instruction was a correct statement of the law, and that under that view of the law, the verdict was supported by the evidence. We think that the instruction was erroneous. Our reasons for so holding lead to the conclusion that the motion for a directed verdict and the motion for judgment notwithstanding the verdict should have been granted.

The language of this instruction attempts to parallel the words of the second circuit in Albanese v. N/V Nederl. Amerik Stoomv. Maats., 346 F.2d 481 (2d Cir. 1965), where the court said:

> "Whatever fault of a shipowner may be said to relieve the stevedore of his duty under the warranty, it seems plain that it must at the least prevent or seriously handicap the stevedore in his ability to do a workmanlike job." 346 F.2d at 484.

In spite of the strong similarity of language, we feel that the challenged instruction is not consistent with the law which determined Albanese.

The source of the particular point of law here involved is a statement by Mr. Justice Clark writing for the Court in Weyerhaeuser S.S. Co. v. Nacirema Operating Co., 355 U.S. 563, 567, 78 S.Ct. 438, 441, 2 L.Ed.2d 491 (1958):

> "If in that regard respondent [stevedoring company] rendered a substandard performance which led to foreseeable liability of petitioner [shipowner], the latter was entitled to indemnity *absent conduct on its part sufficient to preclude recovery.*" (Emphasis added, footnote omitted.)

There is no real discussion about what would be such conduct as would preclude indemnity, but the Court indicated that negligence alone would not necessarily preclude indemnity.

After *Weyerhaeuser* came the very important case of Crumady v. The Joachim Hendrik Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959). In that case the ship had set a safety device, the boom cut-off switch, at twice the level of safe operation. But when the stevedores began operations they moved the head of the boom, which act was the primary cause of the fall of the boom—it "brought into play" the danger created by the shipowner. Speaking directly to the question of indemnity, the Court said:

> "We conclude that since the negligence of the stevedores, which brought the unseaworthiness of the vessel into play, amounted to a breach of the warranty of workmanlike service, the vessel may recover over." 358 U.S. at 429, 79 S.Ct. at 448.

Thus the standard was established that the question of indemnity between an unseaworthy vessel and negligent stevedores would turn on whether the negligence of the stevedores brought into play the unseaworthiness, i. e., was the activating force which caused the injury.

It was in light of *Weyerhaeuser* and *Crumady* that the second circuit decided *Albanese.* Albanese, a longshoreman, was injured by monoxide fumes from equipment operated by the stevedore. The stevedores were aware of the danger and asked a ship's officer to turn on the ship's ventilating system. The officer

indicated that he would comply, but never did. The stevedore continued work, and Albanese collapsed. The dangerous collection of the fumes made the vessel unseaworthy, but the issue was indemnity from the stevedoring company for "bringing into play" the unseaworthiness of the vessel—permitting the men to work in an unsafe place. The trial court had instructed the jury that the stevedores' request to the ship's officer to turn on the ventilation system absolved the stevedoring company of liability for indemnity. This was held erroneous, based on Misurella v. Isthmian Lines, Inc., 328 F.2d 40 (2d Cir. 1964). To explain their finding of error, the court in *Albanese* offered the language quoted hereinabove with respect to the shipowner's *fault*. The purpose was not to fix any standard or establish any rule, because it was unnecessary in that case. By using the phrase "at the least" the court indicated that the gravity of the shipowner's fault was required to be no less than that it "prevent or seriously handicap the stevedore." But there is nothing to indicate that the court in *Albanese* set up a standard barring indemnification which did not include the possibility of a negligent stevedore bringing into play the unseaworthy condition of the vessel. This latter ingredient was missing from the instruction. The instruction given and objected to here precluded indemnity absolutely without any reference to the stevedore's conduct.[1]

■ There is also the problem that the challenged instruction altered the second circuit's *Albanese* language. The second circuit spoke of the gravity of the "fault" of the shipowner, whereas the challenged instruction deals with the "condition" of the vessel or its cargo. The change is contrary to the concept of *Crumady* in looking to the conduct of the stevedore in relation to the unseaworthy condition to determine indemnification. If the vessel's condition seriously handicapped the stevedoring company in doing its work in a safe manner but the company brought the unseaworthy condition into play by utilizing a grossly negligent method of discharging the vessel in the face of the known danger, the challenged instruction would deny indemnification but *Crumady* would allow it. The instruction is erroneous.

The second specification of error is that the district court should have granted appellant's motion for a directed verdict and also should have granted its motion for judgment notwithstanding the verdict. Under Rule 50(b) of the Federal Rules of Civil Procedure the decision on the motion for directed verdict was reserved and renewed in conjunction with the motion for judgment n. o. v. We agree with the appellant that the motion for judgment n. o. v. should have been granted.

■ The third-party complaint for indemnity was an action for breach of the stevedore's warranty of workmanlike service. Counsel for appellee stevedoring company admitted that appellee had breached its contract in two respects, failing to stop work and using an unsafe method to discharge the cargo. (R.T. pp. 281–82.) Certainly had it ceased work the injury would not have occurred. Reasonable men could not differ that it was the admitted failings of appellee which brought into play the unseaworthy condition of the vessel to cause the injury. Appellant was entitled, as a matter of law, to judgment of indemnity, and the district court erred in not granting that judgment.

Reversed and remanded with instructions to enter judgment in favor of appellant and against appellee on the third-party complaint.

1. The second circuit recognized in Mortensen v. A/S Glittre, 348 F.2d 383, 385 (2d Cir. 1965), that their "at the least" concept offered in *Albanese* is to be read in conjunction with the *Crumady* rule that the stevedoring company will be liable if its negligence brought into play the unseaworthiness of the vessel.