**C. H. AUSTIN et al., Appellants,**

**v.**

**H. T. GALLAHER, Appellee.**

**No. 14583.**

Court of Civil Appeals of Texas.

San Antonio.

June 14, 1967.

Rehearing Denied July 19, 1967.

Lloyd, Lloyd, Dean & Ellzey, Alice, for appellants.

Lagerquist, Shaw, & Davis, San Antonio, Perkins, Floyd, Davis & Oden, L. H. Warburton, Jr., Alice, for appellee.

KLINGEMAN, Justice.

Action of H. T. Gallaher against C. H. Austin and C. H. Austin, Jr., for breach of contract involving an alleged sale of certain candy vending machines. Trial was by the court without a jury and judgment entered in favor of plaintiff against defendants for the sum of $3,000.00, interest and costs. No findings of fact or conclusions of law were requested or filed by the trial court.

The C. H. Austin Candy Company was the distributor for the Tom Houston Peanut Company and operated and maintained a large number of candy vending machines over an area covering a substantial part of South Texas. C. H. Austin, also known as C. H. Austin, Sr., was the owner of such business, and his son, C. H. Austin, Jr., worked in that business, his exact capacity being somewhat unclear from the record, but there is some evidence that he was the general manager. H. T. Gallaher, the plaintiff, owned a number of refrigerated candy vending machines and had been operating them at military posts in the San Antonio area. He lost the concessions contract and desired to sell his machines, and this suit arose out of a purported sale of

some of such vending machines. For purposes of convenience, the parties herein will be referred to as designated in the trial court.

In a nonjury case, where appellant contests the trial court's judgment without requested findings of fact and conclusions of law, an appellate court must assume the trial court's findings were all in support of its judgment, and the judgment must be affirmed if there is any evidence of probative force to support it on any theory authorized by law. City of Abilene v. Meek, Tex.Cr.App., 311 S.W.2d 654, writ ref'd; Western Woods Products Co. v. Bagley, Tex.Civ.App., 274 S.W.2d 111, writ ref'd n. r. e.; 4 Tex.Jur.2d, Appeal and Error, § 747 (1959).

Defendants' first point of error is that plaintiff, H. T. Gallaher, testified he made no trade of any kind or character with defendant C. H. Austin, consequently, plaintiff was not entitled to recover judgment against C. H. Austin for any amount, and the trial court erred in rendering judgment in favor of plaintiff against C. H. Austin. Plaintiff contends that the so-called "admission" relied upon by defendants was taken out of context and does not correctly set forth the full extent of plaintiff's testimony, and is not an admission as contemplated under Texas law.

The case of United States Fidelity & Guaranty Co. v. Carr, Tex.Civ.App., 242 S.W.2d 224, writ ref'd, sets up five tests to be met before a declaration can be held to be a judicial admission and thereby conclusive against the party making same. One of these tests is that the statement must be deliberate, clear and unequivocal. Plaintiff in one instance, on initial cross-examination, testified that C. H. Austin, Sr., never made any agreement to buy the machines from him. However, defendants later chose to cross-examine plaintiff further on this matter and, after first affirming his statement as to C. H. Austin, Sr., he was asked "and so you are not holding him to anything in this case?" to which the plaintiff replied, "only as through Junior who I regarded as his representative after assurance at the first visit, when he said Junior is going to have to handle it." In addition, plaintiff's testimony on direct examination is to the effect that he negotiated and contracted with both C. H. Austin, Sr., and C. H. Austin, Jr. The Court in U. S. Fidelity & Guaranty Co. v. Carr, supra, held that "If the statement merely contradicts some other portion of the party's testimony, conclusive effect cannot be given thereto, but a fact issue is presented for the determination of the jury or the judge sitting without a jury as in the case of an ordinary witness." In Leonard v. Smith, Tex.Civ.App., 186 S.W. 2d 284, no writ, the Court held that the rule that the testimony of a party to a lawsuit must be construed as binding upon him is not controlling where he subsequently modifies or explains his former testimony, and the probative value of the testimony is held to be a question of fact for the jury or the trial court. See also 2 McCormick & Ray, Texas Evidence, § 1128 (2d ed.1956). Considering all of plaintiff's testimony, we think defendants' first point of error is without merit and it is overruled.

Defendant's second and third points of error will be discussed together, as much of the evidence is germane to both points. Defendants' second point is that the trial court erred in rendering judgment against defendant C. H. Austin, because the evidence shows that defendant C. H. Austin, Jr., was only an employee of C. H. Austin, his father, and is wholly insufficient to show that C. H. Austin, Jr., had any authority to purchase the machines in controversy. Defendants' third point of error is that the trial court erred in rendering judgment against defendant C. H. Austin, Jr., because the evidence is insufficient to show that C. H. Austin, Jr., ever agreed to purchase from plaintiff the machines in controversy.

Defendants assert that the burden was on the plaintiff to prove that C. H. Austin, Jr., had authority from his father, C. H. Austin, to buy such machines, and that there is no evidence that C. H. Austin, Jr., had any such authority. Plaintiff asserts that the trial court did not err in rendering judgment against C. H. Austin, Jr., as the evidence clearly shows that plaintiff had a contract with both C. H. Austin and C. H. Austin, Jr., as co-principals, or, in the alternative, that C. H. Austin, Jr., was clothed with actual and apparent authority by Austin, Sr., when the contract was entered into. In the absence of any evidence of actual authority, either express or implied, in an alleged agent, one may still be held liable as a principal on the grounds that such alleged agent has apparent authority to act, and "if the principal has thus clothed the agent with such apparent authority, he will not be heard to assert, as against third persons dealing with the agent on the 'strength of such authority, that he did not intend to vest such authority in the agent." 2 Tex.Jur.2d, Agency, § 44 (1959). "Estoppel, as it relates to 'apparent authority,' has been defined as follows: 'When one, by his words or conduct wilfully causes another to believe the existence of a certain state of things, and induces him to act on that belief, so as to alter his own previous position, the former is concluded from averring, against the latter, a different state of things, as existing at the same time.' " Collins v. San Antonio Food Products & Produce Co., Tex.Civ.App., 188 S.W.2d 888, writ dism'd; 2 Tex.Jur.2d, Agency, § 43.

A brief résumé of the pertinent evidence in this regard discloses that plaintiff, on or about February 1, 1963, contacted C. H. Austin, Sr., at his place of business, relative to the sale of these machines. After some discussion, Austin, Sr., called in his son, C. H. Austin, Jr., and some pictures of the machines were examined. Plaintiff testified that on such occasion some discussion was had as to the price of the machines, and plaintiff stated that he would take $200.00 a machine if they only took part of the machines, but if they wanted all of the machines he would take $150.00 each. Plaintiff further testified that he was then told that they were interested and either Senior or Junior would come to San Antonio the following week to look at the machines, and then make some arrangements to purchase them if they were satisfactory to whoever came up. Thereafter, on or about February 12, 1963, Austin, Jr., came to San Antonio and inspected some of the machines. Plaintiff testified that after such inspection, Austin, Jr., stated that they would be willing to pay for such machines at the rate of $2,000.00 per year for the 70 machines at $150.00 each, and plaintiff agreed to such proposition, and they shook hands on it; which testimony is corroborated by a third party witness, Emmett Mims, who testified that he was present on such occasion. Plaintiff thereafter proceeded to key alike all 70 machines. Shortly thereafter, C. H. Austin, Jr., came to San Antonio and picked up ten machines which were taken to Alice, and some, if not all, placed in various locations served by the C. H. Austin Candy Co. Sometime thereafter, Austin, Jr., again went to San Antonio and looked at additional machines, and on such occasion Austin, Jr., and plaintiff went to Southwestern Motor Transport in San Antonio, where some arrangements were made for shipping additional machines to Alice, and plaintiff testified that Austin, Jr., told him that such freight company was going to handle all of the rest, ten at a time.

Plaintiff thereafter made delivery of ten more machines to the docks of Southwestern Motor Transport in San Antonio on May 5, 1963, consigned to C. H. Austin in Alice. Such machines were transported to Alice by such freight company but were never picked up. The testimony is conflicting as to why such machines were not picked up or anything done about them. Plaintiff testified that Austin, Jr., told him it was because he was having a dispute with the freight company as to the freight charges, and Austin denied this. A

letter from the Alice representative of the freight company to plaintiff, dated June 24, 1963, was introduced in evidence and states that the ten machines were being held at Mr. Austin's request, as he was building a new building, and were to be delivered that week and the freight charges collected, but that on said date of June 24 Mr. Austin called and said that he was refusing the machines and would not accept them. Prior to such date, plaintiff had written Austin, Jr., on May 18, 1963, that another ten machines were ready, and on May 19 they were delivered to the docks of Southwestern Transport in San Antonio, consigned to C. H. Austin. On May 20, 1963, C. H. Austin, Sr., called plaintiff in San Antonio and talked to plaintiff's wife and told her to stop this shipment of machines; that he did not want any more machines, and these machines were never shipped. Plaintiff then went to Alice and talked to Austin, Sr. The testimony is conflicting as to just what transpired; plaintiff testified that Austin, Sr., told him that he did not want any more machines, and tried to get him to reduce the price of the first twenty machines, which testimony Austin Sr., denied.

Both defendants deny that Austin, Jr., had any authority to enter into any purchase agreement with regard to such machines, and both deny that they ever entered into any such purchase agreement. A considerable part of defendants' testimony pertains to their contention that there was no contract, and it is their contention that such machines were being tested on a trial basis; that such machines were represented to them as being in good condition but that actually they were defective in various respects. Plaintiff denied any such trial agreement, and denies that the machines were defective. The matter of the authority of Austin, Jr., to enter into any agreement or contract to purchase such machines does not appear to have been raised until the lawsuit was filed, and as late as June 20, 1963, which is almost five months after the initial negotiations, defendants' attorney, in response to a letter written by plaintiff's

attorney on June 19, 1963, to both defendants, making demand for payment of $3,000.00, states in a letter to plaintiff's attorney, that C. H. Austin, Sr., and C. H. Austin, Jr., had brought in such demand letter, and "They told me that when Mr. Gallaher made the agreement to sell the refrigerated vending machines to them he represented to them that the machines were and would be in perfect mechanical condition when they were delivered. It was on the basis of this representation the agreement to purchase the machines was made." This letter contradicts defendants' contentions that there was no contract or agreement and that Austin, Jr., did not have any authority to enter into any type of purchase agreement.

While the testimony was conflicting in most respects, the trial court, having heard all of the evidence with regard to all disputed issues, including that as to the existence of a contract and as to the authority of C. H. Austin, Jr., rendered judgment for plaintiff. In determining if the implied findings of the trial court have support in the testimony, as challenged by defendants, it is our duty to consider only the testimony most favorable to the findings and disregard all to the contrary. O'Ferral v. Coolidge, 149 Tex. 61, 228 S.W.2d 146 (1950); Friendship Baptist Dist. Ass'n v. Johnson, Tex.Civ.App., 230 S.W.2d 598, writ ref'd n. r. e.; General Life Ins. Co. v. Mathes, Tex.Civ.App., 100 S.W.2d 1044, writ dism'd; 4 Tex.Jur.2d, Appeal and Error, § 747 (1959). The record discloses some evidence of probative value to support the implied findings and judgment of the trial court. Defendants' second and third points of error are overruled.

Defendants' fourth and fifth points of error are that the trial court erred in denying defendants' motion for new trial because of new and additional evidence, and in support thereof rely upon an affidavit made by Jesus Mendoza and an affidavit made by Mrs. Mary C. Austin, which were attached to and made a part

of defendants' motion for new trial. The affidavit of Jesus Mendoza is to the effect that he had worked, off and on, for C. H. Austin for many years, and that at the request of C. H. Austin, Jr., he had examined and worked on some of the machines in controversy and that they were defective in several respects. He also stated that during the time he was working on such machines Austin, Jr., told him that they were on trial by his father. The affidavit of Mrs. Mary C. Austin, the wife of C. H. Austin, Jr., is to the effect that she accompanied her husband when he went to San Antonio early in 1963 to see about the candy vending machines, and that she told Gallaher that her father-in-law, C. H. Austin, could not afford to take the machines except on trial, and that Mr. Austin did not want the machines unless they were good machines, and that Gallaher told her the machines were good machines and that he knew the machines were to be taken on trial by Mr. Austin. There is no showing that this evidence was not available at the time of the trial of the case and could not have been discovered by due diligence. Mendoza had worked for C. H. Austin for many years, and Austin, Jr., was well aware that he had worked on some of the machines in controversy. Mrs. Mary C. Austin is the wife of one of the defendants. An indispensable element for the granting of a new trial on the grounds of newly discovered evidence is that movant exercised due diligence to discover the evidence. Foster v. McClain, Tex.Civ.App., 197 S.W.2d 508, no writ; 41 Tex.Jur.2d, New Trial, § 109 (1963). The evidence must not be merely cumulative of the evidence already received, and must be of such a character as will probably change the result on another trial, and the question of whether the new evidence will probably have this effect is one to be determined by the trial court in its discretion. Munden v. Chambless, Tex.Civ.App., 315 S.W.2d 355, writ ref'd n. r. e.; Texas Emp. Ins. Ass'n v. Pillow, Tex.Civ.App., 268 S.W.2d 716, writ ref'd n. r. e.; 41 Tex.Jur.2d New Trial,

§§ 118 and 122. See also New Amsterdam Cas. Co. v. Jordan, Tex.Civ.App., 359 S.W. 2d 864 (Tex.Sup.1962). Defendants' fourth and fifth points of error are overruled.

The judgment of the trial court is affirmed.