VICTORY CARRIERS, INC., a corporation, Appellant,

v.

STOCKTON STEVEDORING CO., Appellee.

No. 21326.

United States Court of Appeals Ninth Circuit.

Jan. 12, 1968.

---

8. 1% of the loans requested by the March 1, 1963 instruments.

John W. Ford (argued), Graydon S. Staring, Warren W. Wilson, of Lillick, McHose, Wheat, Adams & Charles, San Francisco, Cal., for appellant.

Frederick J. Woelflen (argued), of Partridge; O'Connell, Partridge & Fall, San Francisco, Cal., for appellee.

Before CHAMBERS, POPE, and ELY, Circuit Judges.

ELY, Circuit Judge:

A longshoreman was injured while engaged in his work aboard the vessel SS COE VICTORY, owned and operated by the appellant. He instituted suit against appellant, and the appellant, by interpleader, sought to be indemnified by the longshoreman's employer, the appellee, in the event of a determination of its, the shipowner's, liability to the longshoreman. The trial resulted in the conclusion of the District Court, sitting in admiralty, that the shipowner should re-

spond in damages to the longshoreman and that it was not entitled to indemnity from the stevedore. From both aspects of the judgment, the shipowner appealed. Following a compromise, it dismissed its appeal from the judgment in favor of the longshoreman, and the appeal now before us pertains only to the judgment in favor of the remaining appellee, the stevedore. The District Court's jurisdiction properly rested upon 28 U.S.C. § 1333 and Admiralty Rule 56. Our power of review is conferred by 28 U.S.C. § 1291.

At the time of the accident from which the suit arose, the appellant's vessel was berthed at Pier No. 8 in the Port of Stockton, California. It arrived there without cargo at 3 o'clock during the afternoon of January 7, 1963. Fifteen hours before that time, while the vessel was at sea, the chief officer had removed a rung of one of the ship's ladders, after having observed a crack in the weld of the rung. The rung was one of a number of rods welded to the sides of a channel extending into the after, lower portion of the vessel's Number One hold. The longshoreman's injury was found to

have been caused solely by the missing rung. He undertook to descend the ladder in question at approximately 8 o'clock in the morning of January 8, 1963,[1] and fell a distance of seven or eight feet from the point of the missing rung to the deck of the lower hold.

The appellant's broad contention here is that controlling authority, as applied to the facts, required that it be indemnified by the stevedoring company. Specifically, it contends that the stevedore breached its warranty to perform its stevedoring contract in a workmanlike manner, safely and properly. During the trial, it undertook to support its contention by evidence, including the testimony of a gang boss of the stevedoring company itself, to the effect that the stevedoring company, prior to the accident, had been made aware of the fact of the missing rung.[2]

The "Opinion, Findings of Fact and Conclusions of Law" of the District Court are contained in twenty-six pages. Specific and relevant Findings of Fact and Conclusions of Law, those not pertaining to the longshore-

1. In his original complaint, the longshoreman alleged that the accident occurred on January 9, 1963. In its "Petition to Bring in Third Party," the shipowner also alleged that the accident occurred on that date. The stevedore, in its pre-trial statement, adopted those portions of the pre-trial statement of the shipowner in which it was stated, in effect, that the accident occurred on January 9th. Correcting these mistakes, the court's pre-trial order identifies the true date, established by the evidence, as January 8th, the day after the vessel was put at dock.

2. It also relied upon one of the Safety and Health Regulations for Longshoring, 29 C.F.R. 1504.25(b) (1967), which provides: "When any fixed ladder is visibly unsafe, the employer shall prohibit its use by employees." The regulation was promulgated by the Secretary of Labor pursuant to authority conferred by 33 U.S.C. § 941. In one of its pre-trial answers to interrogatories propounded by the shipowner, the stevedore admitted that "Safety and Health Regulations for Longshoremen promulgated by the United States Department of Labor serve as written instructions for safe practice."

We do not reach the question of whether the District Court should have held that the stevedore violated the Regulations. It made no specific finding, either factual or legal, pertaining to this issue. The shipowner contends that, as a matter of law, the missing rung was a "visible" defect. The stevedore contends that since the defect could not be seen from the top deck, it was not "visible." Assuming that the stevedore's violation of the specific regulation would have constituted breach of warranty, the unresolved question would require a determination as to whether or not the defect, if not known to the stevedore, would have been apparent, or "visible," upon its exercise of reasonable care in the inspection of the conditions under which its employees would be required to work. A related question is whether or not the absence of the rung was "visible," within the meaning of the regulation, to those employees of the stevedore who had actually worked in the after, lower portion of the No. 1 hold between the time of the vessel's docking and the happening of the accident in question.

man's individual suit, are set forth in the margin.[3] In its opinion, the court carefully analyzed portions of the testimony, including that presented by the appellant's chief officer. Any debatable issue as to the credibility of witnesses was, of course, one to be exclusively resolved by the trial court. Conceding that it was free to reject, as it did, oral testimony to the effect that the stevedoring company had generally been informed of ladder defects and the testimony of the stevedore's gang boss that at least two of the stevedore's employees had been informed by one of the vessel's crewmen of the fact of the missing rung, the record does not indicate that sufficient weight was given to an important consideration. Prior to the trial, the appellant, pursuant to Federal Admiralty Rule 31, propounded written interrogatories to the stevedore. In its interroga-

tory No. 10, it inquired: "On January 7, 1963, were you or your representatives aware of any defects in the aft ladder of No. 1 Hatch on the SS COE VICTORY?" In answer thereto, the stevedore replied: "No one to our knowledge was aware of any specific defects in the after ladder of Hatch No. 1 of the SS COE VICTORY on January 7, 1963. *We were advised that some of the ladders on the vessel were known to be defective * * *.*"[4] (Emphasis added.) The stevedore here strives to weaken the impact of the answer by stating in its brief: "This admission was prepared not by the appellee, but by its attorney." This excuse cannot be accepted. At no time did the appellee or its attorney seek to withdraw or modify the answer which was given. The orderly process of justice would be seriously impaired if representations made

3. The specific and relevant Findings of Fact are as follows:

"5. That the work of the stevedoring company here did not cause or bring about the prior existing condition—the missing rung."

"7. That the Chief Officer of the SS COE VICTORY, or any other officer, member of the crew, agent or employee, did not at any time inform Mr. Ed Nitkowski, the stevedoring company's superintendent, of any missing ladder rungs on the ship, or so inform any other officer, agent or employee of said stevedoring company."

"8. That at the time of the injuries sustained by libelant, Stockton Stevedoring Co. was not in exclusive control of the area where the work was being done and Stockton Stevedoring Co. did not, through the libelant or otherwise, fail to perform its contract safely and in a workmanlike manner; and libelant's injuries were not due to a breach of its contract or negligence on the part of the Stockton Stevedoring Co."

Conclusions of Law:

"3. That the aforesaid injuries sustained by libelant, Herman Marquez, were not contributed to or caused by any negligence on the part of Stockton Stevedoring Co. and that respondent, Victory Carriers, Inc., is not entitled to any sum as indemnity from Stockton Stevedoring Co."

4. The answer continued:

" * * * and were specifically informed that a crew member or ship's

officer would be posted as a guard and assigned the duty, giving specific warning of any such defects which existed in any areas where work was to be performed. In light of the fact that we had no specific knowledge of any defect and in light of the difficulties of individually warning all of the stevedores on all of the crews working on the vessel of any such defect, we relied upon employees of the vessel owners to give such warning when necessary."

Subsequently, however, the appellant, in a "Request For Admission of Facts," asked the stevedore to admit that on January 7, 1963, and January 8, 1963, "no vessel officer of the SS COE VICTORY represented to you that a crew member or ship's officer of the SS COE VICTORY would be posted as a guard at any defective ladders on the vessel to give specific warning of any such defects to your employees." In reply, the stevedore denied the requested admission "for the reason that no vessel officer of the SS COE VICTORY ever told, notified or represented to the superintendents or respondent-impleaded, or its employees, of the existence of any defective ladder on the vessel in question."

From this, along with the remainder of the record, including the court's opinion, it is clear that the stevedore ultimately chose principally to rely upon the claim that, prior to the accident, it had received no notice, specific or general, of any ladder defect whatsoever.

by attorneys could be easily disregarded. At the same time, the statement that the stevedore had been informed of ladder defects was contained in an unsworn answer to an interrogatory. That there was subsequent equivocation is indicated not only by the stevedore's answer, heretofore quoted in our footnote 4, supra, to the shipowner's Request for Admissions, but also by the court's Pre-trial Order, signed by all counsel, reciting that "the stevedore * * * *may* have been advised that some of the ladders on the vessel were defective * * *." (Emphasis added.)

■ An answer to an interrogatory is comparable to answers, which may be mistaken, given in deposition testimony or during the course of the trial itself. Answers to interrogatories must often be supplied before investigation is completed and can rest only upon knowledge which is available at the time. When there is conflict between answers supplied in response to interrogatories and answers obtained through other questioning, either in deposition or trial, the finder of fact must weigh all of the answers and resolve the conflict. Cf. Austin v. Gallaher, 417 S.W.2d 363 (Tex. Civ.App.1967). On the other hand, if a party makes a crucial admission in his formal pleading, or in response to a formal request for admissions, then the admitted fact is to be taken as established, absent a timely request for, and the granting of, relief therefrom. We therefore conclude that the District Court was not required to accept, as established fact, that the stevedore had, on January 7, 1963, the day before the accident, been "advised that some of the ladders on the vessel were known to be defective." We do believe, however, that the District Court should make a specific factual determination of this issue.[5] In the light of the contents of the court's opinion, it cannot be implied that there was a determination adverse to the position taken by the shipowner. The District Court

rested its denial of indemnity upon only one asserted proposition, stating that "[i]f recovery against the stevedoring company would be warranted, as indemnity or otherwise, it would be only for the reason that the stevedoring company, *having knowledge of the missing rung,* did not inform libelant of same or take any precaution to protect him from injury due to the missing rung." (Emphasis added.) We cannot accept the quoted conclusion as a statement of correct principle. Under the emphasized language, the stevedore would be relieved, as it was, unless found to have had specific, actual knowledge that a rung was missing from the ladder in question. This is hardly proper. Under the obligation of its warranty to perform its expert service in a properly safe and workmanlike manner, a stevedore alerted to the existence of defects in some of a ship's ladders should be required to conduct such a preliminary inspection as would disclose any patent conditions of danger to which its workmen might be exposed and to take reasonable steps to prevent such exposure.

■ It has been held that the failure of a stevedore to remedy, or cause the ship's crew to remedy, the condition of a missing safety pin in a ship's winch, of 'which the stevedore had *constructive notice,* constituted breach of warranty, requiring the stevedore to indemnify the shipowner against loss arising from the defect. Drago v. A/S Inger, 194 F.Supp. 398 (E.D.N.Y.1961), aff'd, 305 F.2d 139 (2d Cir.), cert. denied, Daniels & Kennedy, Inc. v. A/S Inger, 371 U.S. 925, 83 S.Ct. 292, 9 L.Ed.2d 232 (1962). Very recently, our court reviewed certain of the principles which are here applicable. H & H Ship Serv. Co. v. Weyerhaeuser Line, 382 F.2d 711 (9th Cir. 1967). We wrote:

"In Weyerhaeuser S.S. Co. v. Nacirema Operating Co., . . . [355 U. S. 563, 567, 78 S.Ct. 438, 2 L.Ed.2d 491 (1958)], the Supreme Court suggest-

---

5. It should be held, in the circumstances, that there has been a waiver of attorney-client privilege in connection with in-

formation leading to the answer given in response to the Interrogatory No. 10.

ed that the vessel owner was entitled to indemnification from a substandard performing stevedore, 'absent conduct on its part sufficient to preclude recovery.' The Supreme Court has not indicated what conduct will be sufficient to preclude recovery, and the question has given rise to some confusion. Compare Rederi A/B Nordstjernan v. Crescent Wharf & Warehouse Co., 372 F.2d 674 (9th Cir. 1967), with Albanese v. N/V Nederl. Amerik Stoomv. Maats., 346 F.2d 481 (2d Cir. 1965), reversed on other grounds, 382 U.S. 283, 86 S.Ct. 429, 15 L.Ed.2d 327 (1965). As we noted in the *Nordstjernan* case, *Albanese* stands for the proposition that indemnification cannot be precluded unless the vessel owner's conduct shall at the least 'prevent or seriously handicap the stevedore' in doing a workmanlike job. We said in the *Nordstjernan* case that conduct which amounts to such a handicap may not necessarily preclude indemnification. Where the vessel owner's conduct does not amount to such a handicap, however, the vessel owner, as a matter of law, is not to be precluded from indemnification."

382 F.2d at 713.

■ If further consideration leads to the conclusion that the stevedore in the case at hand did indeed commit a breach of its warranty, then there must be a determination, not yet made, as to whether or not any conduct on the part of the shipowner was such as to "prevent or seriously handicap the stevedore" in the performance of its service. From all that appears in the record before us, we see none. Cf. Compania Anonima Venozolano de Navegacion v. Matthews, 371 F.2d 971 (5th Cir.), cert. denied, 389

U.S. 820 (1967). The District Court speculated that the appellant's crew might have, between the time of the removal of the defective rung at sea and the docking at the Port of Stockton, accomplished the installation of a new rung. The Supreme Court has written that "liability should fall upon the party best situated to adopt preventive measures and thereby to reduce the likelihood of injury." Italia Societa per Azioni di Navigazione v. Oregon Stevedoring Co., 376 U.S. 315, 324, 84 S.Ct. 748, 754, 11 L.Ed.2d 732 (1963). This language should not be construed in such a way as to preclude the award of indemnity to a shipowner simply because his vessel is docked in an unseaworthy condition. A plying vessel is ever subjected to the sea's destructive force, a fact which has caused our court to remark:

"Further, the policy considerations discussed by the court below seem valid— (a) the possibility, or even probability, of unseaworthiness after long voyages, and (b) the expertise of the stevedoring company and its employees."

Metropolitan Stevedore Co. v. Dampskisaktieselskabet Int'l, 274 F.2d 875, 876 (9th Cir.), cert. denied, 363 U.S. 803, 80 S.Ct. 1237, 4 L.Ed.2d 1147 (1967).

■ Finally, we note that the District Court apparently proceeded upon the theory that the stevedore should not be held to have acquired notice of a defective condition unless the source of the information was a ship's officer and unless the direct recipient of the information was one of the stevedore's personnel "higher up like a superintendent." This view was improper. If the stevedore acquired advance warning of defects, the source of the knowledge is immaterial.[6]

Reversed and remanded.

---

**6.** While the shipowner did not here claim that its warning was conveyed to other than a supervisory employee of the stevedore, it has been held that knowledge of a nonsupervisory employee is sufficient to charge the employing stevedore with constructive notice of a dangerous condition. Nicroli v. Den Norske Afrika·OG Australielinie, etc., 332 F.2d 651, 656 (2d Cir. 1964).

On page 14 of its brief in our court, the appellee states:

"Appellee does not argue with the proposition that knowledge of any stevedore (supervisory or nonsupervisory) as to the existence of a defective condition on a vessel is sufficient to charge the top echelon with responsibility should an injury occur as a result of the defect."